

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA



Richard Lincoln IN THE NAME OF THE
UNITED STATES GOVERNMENT
PURSUANT TO THE FALSE CLAIMS
ACT, 31 U.S.C. SECTION 3730

              Relator/Plaintiff

vs.

Quad Partners
570 Lexington Avenue 36th Floor
New York, NY 10022

and

Star Career Academy
Centennial Center, Suite 105
175 Cross Keys Road,
Berlin, NJ 08009-9908



              Defendant.

**FILED**

MAY 1 3 2011

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

## FILED UNDER SEAL

Qui Tam Complaint pursuant to
Section 31 U.S.C. Title 3729 and
3730, including Relator's
individual State statutory

11    3160

Docket No. _____

-1-

Plaintiff/Relator hereby files this Qui Tam Complaint pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq* in that it is a civil action arising under the laws of the United States, including Relator's pendant individual claims.

## I. Introduction

1.    As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), the Relator has provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of Pennsylvania a statement of all material evidence and information related to the complaint.  These disclosure statements supported by material evidence known to Relator at his filing establishing the existence of defendants' false claims.

2.    Relator is an original source of this information to the United States. He has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under the False Claims Act which is based on the information.

3.     The Defendant operates approved post secondary career colleges and schools under the name Star Career Academy (SCA) which are funded through Title IV Federal Education programs.

4.    Beginning in 2009, Defendant began to offer programs (most notably, dialysis tech and surg tech) which offered externships ranging from 300 - 500 hours as a significant part of the program. The overall programs ranged from 900 - 1020 hours and cost approximately $16,000.00 dollars.

5.    Sometime in early 2010, Defendant lost the sites it had planned to provide these externships at and has not found replacement sites. Instead of refunding the monies to the students and Government, Defendant "dropped" approximately 150 students from the program in December 2010 and have retained funds that they are not

-1-

entitled to keep. There are at least 80 other students who are now or will soon be ready for their externship without any place to go. Relator was the Regional Director of Admissions but was demoted after complaining about the illegal conduct.

## II. The Parties

### A. Relator - Richard Lincoln

6.     Relator is  Richard H. Lincoln. He has been employed with Star Career Academy (formerly known as Star Technical Institute) for 21 years. He was first employed by them as an Instructor of the Specialized Computer Operations program and taught in Delaware and South Jersey from 2/1990 to 11/1993.  At that time, he was then promoted to Executive School Director of the Somerdale, NJ Main Campus. He held that position, until he was again promoted to Executive Director of Training for the Corporate Office in the fall of 1998.

7.     After a change in ownership in 2000, Relator was promoted to the Executive Director of Admissions/Director of Admissions and held that position until a another change in ownership in September 2008.  At that time, he was retained by the new and current ownership, Quad Partners, and given the title of Regional Director of Admissions.

8.     Relator's duties as the Regional Director of Admissions were to travel to the five locations in NJ and PA (Philadelphia, PA, Egg Harbor Township, NJ, Lakewood, NJ, Newark, NJ, and Clifton, NJ) and work directly with the Executive School Director, Director of Admissions for each location, the Admissions Representatives and report daily to Michele Mumma, Vice-President of Sales and Marketing. He was given a verbal review and received a $10,000 bonus at the end of 2008 (after four months of service).

9.     During 2009, Relator continued his services as Regional Director of Admission and traveled to all locations listed above. In addition, he would work closely with Michele Mumma on Quarterly meetings, sales, and marketing strategies. He was

given a very favorable formal written review, and received a $15,000 pay increase to his salary and a bonus of $10,000.

## B.  Defendant Quad Partners

10.    Quad Partners ("Quad") was founded in 2000 to make value-added private investments in the education industry. Today, Quad is the most active investor in privately-owned education companies in the United States. Quad limited partners include CMS Companies, Goldman Sachs, Harbour Vest, Landmark Partners, Merrill Lynch, Morgan Stanley, Pa.

11.    Quad invests in the education industry with a focus on career-oriented post secondary schools, K-12 proprietary schools, curriculum - core and supplemental, tutoring and after-school programs, consumer - educational products and services, professional education and journals, corporate training and knowledge management, online learning, early education and childcare, services and products provided to K-12 and post secondary schools. Quad was founded in 2000 and is based at New York at 570 Lexington Avenue 36th Floor, New York, NY 10022 with an additional office at Newport Beach, California.

## C.  Defendant Star Career Academy

12.    Star Career Academy (SCA) was founded in 1979 as the Star Technical Institute school group offering training in drafting and design. In 1983 the schools diversified their training programs introducing business, computer and allied health programs. With the dramatic expansion of the health care industry, a decision was made to specialize in allied health training and programs were developed including medical assisting, medical billing, surgical technology, electrocardiography, dialysis technician and multi-skill health technology. The Philadelphia campus added a paramedic program authorized by the Pennsylvania Department of Health. The

-3-

corporate offices are located at Centennial Center, Suite 105, 175 Cross Keys Road, Berlin, NJ 08009-9908.

13.     In August 2008, four Star Technical Institute campuses (Egg Harbor Township, Philadelphia, Lakewood and Newark) became branches of two New York-based career schools: Culinary Academy of Long Island and Career Academy of New York. This brought the schools under the umbrella ownership of Quad Partners.

14.     In 2009, a campus was added in Clifton, New Jersey as a satellite of the Newark school and in 2010, the Lakewood school moved to Brick, New Jersey. In 2010, a branch campus was added in Norristown, Pennsylvania and the eight campuses adopted Star Career Academy as their common name.

15.     The schools operate as approved and licensed post secondary career training schools. In Pennsylvania, the Pennsylvania Department of Education (PADOE) is the government authority that reviews and approves such schools. In New Jersey, the jurisdiction and oversight resides with the New Jersey Department of Education & Labor and Workforce Development (NJDELW).

16.     As part of the approval and oversight function of the PADOE and NJDELW, the applicant must eceive accreditation from the Accrediting Commission for Career Schools and Colleges (ACCSC). As part of the approval process the applicant must have its curriculum approved, including any externships that are to offered.

17.     In 2009, SCA sought and received approval to offer externships in two programs (see below). Thereafter, based on this approval, they sought federal financing on the condition that they would deliver this curriculum, including the externships.

-4-

## C.  The United States of America

18.     The United States of America ("USA") through the Department of Education  operates student financial assistance programs under Title IV.  These programs include (i)  the Federal Pell Grant Program, (ii) the Federal Supplemental Education Opportunity Grants  (FSEOG), (III) the Federal Family Education Program (FFELP (Stafford Loans) & Federal Direct Loan Program (subsidized or unsubsidized) and (iv) Federal Stafford Loans/Direct Loans.

## III.  Jurisdiction and Venue

19.     This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

20.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because the acts proscribed by 31 U.S.C. §§ 3729 *et seq.* and complained of herein took place in this district, and is also proper pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, defendants transact and transacted business in this District.

# IV. THE FEDERALLY FUNDED PROGRAMS OF SCA  WITH EXTERNSHIPS

## A.  The Dialysis Tech Program

21.     The Dialysis Technician Program is supposed to provide students with the proper theoretical and clinical training for entry-level employment in the health care specialty of nephrology as Hemodialysis Technicians. Students take classes such as "Introduction to Dialysis and Renal Disease", "Patient Care and Clinical Fundamentals", and "Psycho-Social Aspects, Nutrition and Pharmacology". Employment opportunities are available in Hospital Centers, Outpatient Maintenance Dialysis Centers, Transplant

Centers, and other Health Care Agencies utilizing a dialysis unit.

22.    In New Jersey, the program was submitted to and approved for 900 hours, 600 of which was intended to be classroom work and 300 of which was to be in an externship that was to occur upon successful completion of the classroom work.

23.    In Philadelphia, the program was submitted to the appropriate authorities and approved for 1000 hours, 500 of which was intended to be classroom work and 500 of which was to be in an externship that was to occur upon successful completion of the classroom work. In total, the program can take up to one year to complete.

24.    The tuition cost of this program was approximately $16,465.00 dollars. Almost all of these funds come from student loans and or grants applied for by the students which are funded to the School directly.

## B.  Surgical Technology

25.    SCA's Surgical Technology program is designed to give students the necessary knowledge and skills to gain employment as a surgical technician. Students study all aspects of surgery, including the law and ethics surrounding surgery, surgical environments, pharmacology, microbiology, sterilization, aseptic techniques, OSHA regulations, transporting and positioning of surgical patients, wound closure, anesthesia, surgical instruments, surgical emergencies, communication skills, medical terminology, anatomy, physiology and more.

26.    Students are supposed to be provided with the in-depth knowledge and school-related experience to obtain entry-level employment in various surgical environments such as hospitals, surgical units, and surgeon's offices.

27.    The program was approved for 1020 hours, 720 of which was intended to be classroom work and 300 of which was to be in an externship that was to occur upon successful completion of the classroom work.

-6-

28.     The tuition cost of this program was approximately $16,000 dollars. Almost all of these funds come from student loans and or grants applied for by the students which are funded to the School directly. In total, the program can take up to one year to complete.

## V.  THE FEDERAL FUNDS

29.     Star Career Academy participates in Title IV Federal Student Financial Assistance programs. Students who are U.S. citizens or permanent residents may qualify for one or more of the following financial assistance programs.

30.     To apply for financial aid, students must complete the "Free Application for Federal Student Aid" (FAFSA) which is available through the Financial Aid Office.

31.     The Federal funds are disbursed directly to the School at periodic intervals, but the School is deemed to have "earned" the full amount if the student completes 60% of the program. If this threshold is not reached, there is a proportionate refund due the student and the school must refund the money to the Federal Government.

### A.  Federal Pell Grant Program

32.     The Federal Pell Grant program is the foundation of the federal government's financial aid programs. The Pell Grant, unlike the loan, does not have to be repaid. If qualified, the Pell Grant amount will be determined by formulas established by the U.S. Congress.

### B.  Federal Supplemental Education Opportunity Grant (FSEOG)

33.     The FSEOG is awarded to eligible students using federal funds. To receive a FSEOG grant, a student must demonstrate exceptional financial need, with preference given to students who receive Pell grants.

### C.  Federal Family Education Program (FFELP (Stafford Loans))
### & Federal Direct Loan Program (subsidized or unsubsidized)

34.     The eligibility and annual maximums for the Federal Direct Student Loan (FDSL) Programs are identical to the Federal Stafford Loan and Federal PLUS Loan Programs. The only difference in the programs is that under FDSL, the student receives the loan funds from the federal government, through the school, rather than from an independent lender.

### D.  Federal Stafford Loans/Direct Loans

35.     Federal Stafford/Direct Loans are low-interest loans made to students attending school at least half-time. Federal Stafford/Direct Loans, unlike grants, are borrowed money that must be repaid, with interest and payments normally begin six months after leaving school. The amount of each payment depends on the size of the debt and the ability to pay.

### VI.  Factual Background

### A. Lack of Externship Sites

36.     Relator became aware that SCA was not providing the externships as required and as promised by SCA in the Dialysis program and Surg Tech Program in May 2010.

37.     At the time, Relator spent most of May 2010 in the Clifton, NJ location and this was the first time that he became aware of students reaching their last day in class without having an externship assigned to them.  Therefater, he became aware of it being posted on websites by the students regarding their displeasure with the school. His initial discussions about this took place with Brian Condon, who was at this time the Executive School Director, and Michele Mumma.

-8-

38.     There was a lack of externship sites available to the students in Clifton and Newark. Relator was told by Michele that Colleen Leard, Corporate Externship Coordinator for the Surgical Technology and Dialysis Technician programs, was aware of the problem and working on it. He directly voiced his concern about this to both of them.

39.     During June of 2010, Relator spent most of his time in the Philadelphia, PA location. He inquired to the Executive School Director, Jamie Kavelak regarding her Dialysis program and externships.  At this time, all students were being placed within sites offered by Davita (Nationwide Dialysis Center), but that she was aware of the problems happening in other locations. Jamie and relator discussed the implications of not having externships for her students. Philadelphia started 47 students into their Dialysis Technician program in May of 2010 and an additional 22 students in June of 2010.

40.     On August 2, 2010 the Brick, NJ location started 18 new students in the Dialysis Technician program.  On August 10, 2010 Relator received an email from Kevin Tice, Director of Admission for the Clifton and Newark, NJ locations. Kevin expressed concerns over complaints that he was receiving regarding a lack of externships.

41.     On August 19th and 20th, 2010, an Admissions/Financial Aid meeting was held for the teams from all locations. During this meeting, the externship problem in Clifton and Newark was again brought up by Kevin Tice, Director of Admissions for Clifton and Newark.  Again Michele Mumma expressed that this was being handled by the corporate office and we should not be worried about it.  At this time, Relator recommended to Michele Mumma that we stop enrolling into this program and that she needed to make sure that Mike Iannacone was fully aware of the problems.

42.     On September 1, 2010, Relator received an email from Kevin Tice

-9-

regarding a discussion he had with Michele Mumma. Kevin believed that Relator calling the school a "mess" was referring to his department.  It was in fact conversation he had with her about the externship problem.

43.     On September 8, 2010, Relator was informed that the Clifton and Newark, NJ locations would no longer be under his guidance or responsibility. Michele Mumma sited no issue with his position or performance and that this decision was made so that Relator could pick up the new location in Norristown, PA and not have to travel so far up North.  Derrick Ruffin was named the new Regional Director of Admissions for Clifton and Newark, NJ, as well as, New York, NY and Long Island, NY.

44.     During September, 2010, Relator received several phone calls from the father of D.S.[1] , who was a student in the Dialysis class in Egg Harbor, NJ. He had expressed concern over how his daughter was being handled by the Educational faculty of the school regarding her externship.

### B. SCA In "Crisis Mode"

45.     On September 22, 2010, Relator attended the second day of a two day Executive Director's Meeting. During this agenda, the topic of Externships and the Dialysis and Surgical Technology was a key focus. A slide representing that the company was now in "Crisis Mode" because of a lack of externship sites available. Every person in the meeting was made full aware that Star Academy did not have externship sites. At this time, Relator voiced his concern to the group (including Mike Iannacone) that we should stop class starts for this program.

46.     On October 18, 2010, the Egg Harbor Township and Clifton, NJ schools started 22 and 25 new Dialysis Technician students. On November 1, 2010 the Newark,

---

[1] Full name of student is being partially modified pursuant to Local Rule of Civil Procedure 5.1.3

NJ location started 25 new Dialysis Technician students.

47.     On November 9th to 11th, 2010 while attending a company trip to Blue Cliff College in Louisiana, Relator discussed the Dialysis externship problem with Michele Mumma, Jamie Kavelak, and Eric Hurrelbrink (Director of Education at the Philadelphia, PA location).  At this time, he became aware that the Philadelphia location had lost the externship agreement that it had with Davita and that they now had no sites for their students to go to. At this time, Relator again expressed to all present that they should not be starting any additional students in this program.

48.     Despite the crisis, SCA knowingly continued to sign up and admit students to the programs.  On November 15, 2010 the Philadelphia, PA location started 26 new Dialysis Technician students.  On December 14, 2010, the Egg Harbor Township, NJ location started 9 new Dialysis Technician students.

### C. SCA "Drops" Students Without Providing Externships

49.     On December 13, 2010, one hundred and fifty (150) students were dropped from the PA and NJ locations for lack of externship site or a pre text of failure to complete medicals per a corporate call from Al Dawkins, Vice President and Colleen Leard. These were not only Dialysis students, but from all programs.

50.     Refund calculations were performed on the students and only the amount necessary (if the student dropped for normal reasons) was refunded.  The dropping of these students was to ensure that if the student never did complete the program, the school would not have a late refund. A select few students have been refunded their total tuition based upon complaints.

51.     Attached hereto as Exhibits[2] A1 to A10 are some of the transactional documents for some of these students who have been intentionally and wrongfully "dropped", including their Enrollment Agreement, Change of Status (the Drop) and Refund Calculation[3].

## VII.  Transactional Documents

52. The enrollment and funding transactions occurred as follows:

1. Exhibit B[4] - Star Career Academy New Jersey Enrollment Agreement ("Enrollment Agreement"). This document begins the transactional relationship between the student and the school. The Enrollment Agreement states that *"satisfactory completion of Externships"* (if applicable) is a condition of graduating[5]. Furthermore, the Enrollment Agreement states that *"SCA agrees to provide its facilities, staff, equipment and expertise to complete the course of training."*

The Enrollment Agreement also specifies the conditions under which SCA has the right to "cancel/terminate the student's enrollment". These conditions include (1) failing to maintain adequate academic progress; (2) detrimental conduct; (3) failure to make required tuition payments; and (4) the student informs the school that she/he

---

[2] Names of students or other personal identifiers, including social security numbers, dates of birth and financial account numbers or data have been partially or fully redacted pursuant to Local Rule of Civil Procedure 5.1.3. Such unredacted exhibits have been provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of Pennsylvania as part of Relator's Disclosure Statement

[3] A1 through A5 include the records of five students (Enrollment Agreement, Change of Status (the Drop) and Refund Calculation). A6 includes only the change in status (drop form) of six students. A7 through A10 includes Enrollment Agreement and Refund Calculation for four other students.

[4] Name of student or other personal identifiers, including social security numbers, dates of birth and financial account numbers or data have been partially or fully redacted pursuant to Local Rule of Civil Procedure 5.1.3. Such unredacted exhibits have been provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of Pennsylvania as part of Relator's Disclosure Statement

[5] The SCA Rules and regulations also identify the externships as a "condition of the curriculum". A copy of the Rules and Regulations are attached to the Enrollment Agreement.

-12-

cannot continue. It does not give SCA the unilateral right to terminate or cancel the student from the school.

Last, while the Enrollment Agreement appears to give SCA the right to "revise course outlines" or "make such other changes as the school deems advisable", SCA certainly cannot make unilateral changes that have not been approved or require approval from the New Jersey Department of labor and Industry, which is the governing State body under which CSA is a licensed school entitled to operate and is the essential criteria that entitles CSA to receive Title IV funds under the HEA.

2.    Exhibit C[6] - Change of Status ("COS").  If and when there is a change of the student's status, the COS form specifies the reasons, i.e., transfer, leave of absence, withdraw, terminated, etc.

3.    Exhibit D[7] -  Refund Report. This report analyzes the refund due, if any to the Federal Government of the Title IV funds received by them.

53.    A review of the Change of Status form for the five students identified in A1 through A5 and the six student identified in A6 all show that they were dropped for *"failure to progress on externship due to no site"* with a notation 'PER CONFERENCE CALL 12/13/10" and initialed by Colleen Leard.

54.    On January 24, 2011 Relator was told to report to the corporate office and told that he will no longer be the Regional Director of Admissions and that he will report

---

[6] Name of student or other personal identifiers, including social security numbers, dates of birth and financial account numbers or data have been partially or fully redacted pursuant to Local Rule of Civil Procedure 5.1.3. Such unredacted exhibits have been provided to the  Attorney General of the United States and to the United States Attorney for the Eastern District of Pennsylvania as part of Relator's Disclosure Statement

[7] Names of students or other personal identifiers, including social security numbers, dates of birth and financial account numbers or data have been partially or fully redacted pursuant to Local Rule of Civil Procedure 5.1.3. Such unredacted exhibits have been provided to the  Attorney General of the United States and to the United States Attorney for the Eastern District of Pennsylvania as part of Relator's Disclosure Statement

only to the Egg Harbor Township location.  Relator was locked out of the Campus Vue system (student electronic records) for all locations except Egg Harbor. Prior to that day, he had access to all schools.

55.    On February 2, 2011 Relator emailed Michele Mumma regarding his concerns over the Dialysis Technician externships. She sent him an email and followed with a phone call.  She had already contacted the Brick location and explained to Relator that they are stopping the class from starting there because they are going to revamp the program by either eliminating the externship or limiting the hours of that section.

56.    At this time, she did not mention what would happen to the students who are currently now, or in the near future reaching their last day in class.  She asked Relator to contact the students from Egg Harbor who are to begin in April and tell them that the class is being changed and will not start until May of 2011. She called again a short time later to ask Relator not to speak to Randy or Diane Brown, or Ron Stover or Sharon Foley (corporate officers) regarding the program change because no one was supposed to know this yet. In February 2011 Philadelphia, PA suspends afternoon class for that month.

## A. Students Now At Risk of Losing Externship

57.    Currently, there are approximately eighty (80) students from the PA and NJ locations that have or are going to reach in the near future, their last day in class and are supposed to be on their externship from Egg Harbor, twenty five (25) from Clifton, twenty nine (29) from Brick and thirty eight (38) from Newark.

58.    At least 80 students are now close to completing or have completed the classroom work and have no externship to go attend. Attached hereto as Exhibit E and

-14-

F respectively[8] is a list of those in Philadelphia and Egg Harbor campus who have completed classroom work and have no externship. Attached hereto as Exhibit G[9] are a series emails that documents that SCA knew about the problem with the externships, failed to inform the students or Government and even continue to admit new students.

## B. SCA Attempts To Hide The Fraud

59.     As recent as March 2011, SCA has submitted proposed modifications to each of the locations in which it operated an program with an externship, requesting that the externship hours be removed and an equal number of classroom hours substituted. Attached hereto are samples of this submitted to NJSDELW <u>which they have dated March 4, 2010</u>.

60.     Attached hereto as Exhibit H are the Section J Request For Modification forms requesting removal of the externship program. Relator believes that this is being done for Philadelphia as well.  Defendant is attempting to make this change "retroactively" in order to hide their fraudulent attempt to drop students from the externships and avoid the obligation to refund the Title Iv funds to the Government.

## VII. The Department of Education Regulatory Requirements Regarding Refunds

61.     Title IV of the Higher Education Act, as amended, 20 U.S.C. §§ 1070 1099 ("Title IV"), established need-based federally funded student financial aid programs for

---

[8] Name of students or other personal identifiers, including social security numbers, dates of birth and financial account numbers or data have been partially or fully redacted pursuant to Local Rule of Civil Procedure 5.1.3. Such unredacted exhibits have been provided to the  Attorney General of the United States and to the United States Attorney for the Eastern District of Pennsylvania as part of Relator's Disclosure Statement

[9] Names of students or other personal identifiers, including social security numbers, dates of birth and financial account numbers or data have been partially or fully redacted pursuant to Local Rule of Civil Procedure 5.1.3. Such unredacted exhibits have been provided to the  Attorney General of the United States and to the United States Attorney for the Eastern District of Pennsylvania as part of Relator's Disclosure Statement

college and post-secondary vocational training.

62.    The Pell Grant program authorized under Title IV-A § 411 of the Higher Education Act is administered by the United States Department of Education and provides federal funds to eligible post-secondary students in financial need.  The post-secondary institutions act as disbursement agents for the Department of Education.

63.    Federal student aid is distributed to students in two "disbursements," the first one around the start of the academic term and the second one after the student reaches the midpoint. 34 C.F.R. 668.164.  Most SCA students paid nearly all of their tuition with Title IV aid.

64.    Accordingly, the first disbursement of Title IV aid was used to completely satisfy tuition.  SCA did not have "excess" funds to distribute to students at the beginning of the academic term.  SCA advanced "credit" to students who wished to purchase books from the school but did not have their own cash or credit cards. These advances were to be repaid from the second disbursement of Title IV aid.

65.    Title 34 CFR § 668.22 governs when a School must refund funds to the Government when a student is dropped or withdraws. The regulations state as follows:

(a) General.

> (1) When a recipient of title IV grant or loan assistance withdraws from an institution during a payment period or period of enrollment in which the recipient began attendance, the institution must determine the amount of title IV grant or loan assistance that the student earned as of the student's withdrawal date in accordance with paragraph (e) of this section.

> (2) For purposes of this section, "title IV grant or loan assistance" includes only assistance from the Federal Perkins Loan, Direct Loan, FFEL, Federal Pell Grant, Academic Competitiveness Grant, National SMART Grant, TEACH Grant, and FSEOG programs, not including the non-Federal share of FSEOG awards if an institution meets its FSEOG matching share by the individual recipient method or the aggregate method.

. . . . . . .

-16-

(e)  Calculation of the amount of title IV assistance earned by the student.

>   (1) General. The amount of title IV grant or loan assistance that is earned by the student is calculated by--

>>   (i) Determining the percentage of title IV grant or loan assistance that has been earned by the student, as described in paragraph (e)(2) of this section; and

>>   (ii) Applying this percentage to the total amount of title IV grant or loan assistance that was disbursed (and that could have been disbursed, as defined in paragraph (l)(1) of this section) to the student, or on the student's behalf, for the payment period or period of enrollment as of the student's withdrawal date.

>   (2)  Percentage earned. The percentage of title IV grant or loan assistance that has been earned by the student is --

>>   (i)  Equal to the percentage of the payment period or period of enrollment that the student completed (as determined in accordance with paragraph (f) of this section) as of the student's withdrawal date, if this date occurs on or before --

>>>   (A) Completion of 60 percent of the payment period or period of enrollment for a program that is measured in credit hours; or

>>>   (B) Sixty percent of the clock hours scheduled to be completed for the payment period or period of enrollment for a program that is measured in clock hours; or

>>   (ii)  100 percent, if the student's withdrawal date occurs after--

>>>   (A) Completion of 60 percent of the payment period or period of enrollment for a program that is measured in credit hours; or

>>>   (B) Sixty percent of the clock hours scheduled to be completed for the payment period or period of enrollment for a program measured in clock hours.

>   (3)  Percentage unearned. The percentage of title IV grant or loan assistance that has not been earned by the student is calculated by determining the complement of the percentage of title IV grant or loan assistance earned by the

-17-

Case 2:11-cv-03160-PD   Document 1   Filed 05/13/11   Page 19 of 57

student as described in paragraph (e)(2) of this section.

(4)    Total amount of unearned title IV assistance to be returned. The unearned amount of title IV assistance to be returned is calculated by subtracting the amount of title IV assistance earned by the student as calculated under paragraph (e)(1) of this section from the amount of title IV aid that was disbursed to the student as of the date of the institution's determination that the student withdrew.

(5)    Use of payment period or period of enrollment.

(i) The treatment of title IV grant or loan funds if a student withdraws must be determined on a payment period basis for a student who attended a standard term-based (semester, trimester, or quarter) educational program.

(ii)(A)  The treatment of title IV grant or loan funds if a student withdraws may be determined on either a payment period basis or a period of enrollment basis for a student who attended a non-term based educational program or a nonstandard term-based educational program.

(B)  An institution must consistently use either a payment period or period of enrollment for all purposes of this section for each of the following categories of students who withdraw from the same non-term based or nonstandard term-based educational program:

(1)  Students who have attended an educational program at the institution from the beginning of the payment period or period of enrollment.

(2)  Students who re-enter the institution during a payment period or period of enrollment.

(3)  Students who transfer into the institution during a payment period or period of enrollment.

(iii)   For a program that measures progress in credit hours and uses nonstandard terms that are not substantially equal in length, if the institution uses the payment period to determine the treatment of title IV grant or loan funds for a category of students found in paragraph (e)(5)(ii)(B) of this section, the institution must--

-18-

(A)(1) For students in the category who are disbursed or could have been disbursed aid using both the payment period definition in § 668.4(b)(1) and the payment period definition in § 668.4(b)(2), use the payment period during which the student withdrew that ends later; and

(2) If in the payment period that ends later there are funds that have been or could have been disbursed from overlapping payment periods, the institution must include in the return calculation any funds that can be attributed to the payment period that ends later; and

(B) For students in the category who are disbursed or could have been disbursed aid using only the payment period definition in § 668.4(b)(1) or the payment period definition in § 668.4(b)(2), use the payment period definition for which title IV, HEA program funds were disbursed for a student's calculation under this section.

## VIII.  Cause Of Actions

### Count I

### Federal False Claims Act Violation

66.     Plaintiff re-alleges and incorporates Paragraphs 1 through 65 above as if fully set forth herein.

67.     Title 31 USC 3729 defines a false claim as . . . . . (a) Liability for certain acts. (1) In general. Subject to paragraph (2), any person who. . . (G) *knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,. . .*is liable to the United States Government for a civil penalty of not less than $ 5,000 and not more than $ 10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.      This same provision is found in the

-19-

False Claims Act prior to the Amendments in 2009 at subsection (a)(7).

68.    The Defendants *"had an obligation to pay or transmit money"* to the Government when it failed to provide the program that it had represented and agreed to provide to the students, i.e., a dialysis technician and surgical technician program that included, as a material part, an externship.

69.    The Government was due a refund of the full tuition for "dropping" students due to no externship sites available. The externships were a material and essential element of the program, approved by the appropriate State authorities. As result of the failure to offer and provide the externships, the Government was paying for a program that was not approved or sanction by the appropriate State body.

70.    The damages suffered by the Government are equal to the amount of monies that the government actually paid to Defendant in response to the false certifications that the Defendant had complied with Title IV of the HEA. *See, e.g., United States v. Mackby,* 339 F.3d 1013, 1018 (9th Cir. 2003).

71.    In light of the fact that the Government expected to pay for a program with an externship and that was not provided, the damages should be the full amount of the Title Iv funds disbursed. This is approximately 16,000 per student since the full amount has already been disbursed by the time the student is supposed to enter their externship.

72.    Based on the allegations set forth herein, Defendant's actions and course of conduct violates and has violated the False Claims Act, 31 U.S.C. §§ 3729(a)(7) in that has knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

WHEREFORE, Relator respectfully requests this Court to enter judgment against defendants, as follows:

(a)    That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims and fraud alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

(b)    That civil penalties be imposed for each and every false claim that defendant presented to the U.S. and/or its grantees;

(c)    That post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the relator necessarily incurred in bringing and pressing this case;

(d)    That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

(e)    That the relator be awarded the maximum amount allowed to her pursuant the False Claims Act.

## Count II

### Relator v Quad

### *Violation of 31 USC 3730(H)*

70.    Plaintiff re-alleges and incorporates Paragraphs 1 through 69 above as if fully set forth herein.

71.    31 USC 3730(H) provides as follows:

> h) Any employee who is discharged, *demoted,* suspended, *threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer* because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed

-21-

under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

72.    For reasons stated above, Defendant SCA violated section 31 USC 3730(H) by retaliating against Relator by adversely effecting his employment.

WHEREFORE, Relator, requests judgment in his favor and against Defendant as to Count II of the Complaint, awarding statutory damages including compensatory damages, punitive damages, emotional distress, attorney's fees, interest and costs, as well as injunctive relief as is deemed appropriate by the Court.

### Count III

### Foglia, individually v. Defendant
### Conscientious Employee Protection Act

73.    The allegations of paragraph 1 through 272 are incorporated herein by reference as if set forth at length.

74.    Plaintiff continuously objected to his supervisors regrading the practices described herein. At the time of his objections, plaintiff reasonably believed that Defendants  failure to adhere to the requirements of federal and state law were in violation of the law and were in violation of public policy concerning the public health, safety or welfare.

75.    Plaintiff's termination was in violation of the Conscientious Employment Protection Act, N.J.S.A. 34:19-1 et seq ("CEPA").

76.    Defendants satisfy the definition of "Employer" under CEPA.

-22-

77.    Plaintiff  satisfies the definition of "Employee" under CEPA.

78    Plaintiff had a reasonable good faith belief that (I) Defendant's were legally required to refund monies to the Federal Government, (ii) Defendant's actions of "dropping" students under pre-textual false reason constituted fraud, and (iii) enrolling new students into a program which they offered externships knowing that they did not have such sites also constituted fraud.

79.    For reasons stated above, Defendant SCA violated section the Conscientious Employment Protection Act, N.J.S.A. 34:19-1 et seq by retaliating against Relator and by adversely effecting his employment as result of his complaints and objections to the practices set forth herein.

WHEREFORE, Relator, requests judgment in his favor and against Defendant as to Count III of the Complaint, awarding statutory damages including compensatory damages, punitive damages, emotional distress, attorney's fees, interest and costs, as well as injunctive relief as is deemed appropriate by the Court.

DEMAND FOR JURY TRIAL

Relator, on behalf of herself and the United States, demands a jury trial on all claims alleged herein.

FILED

MAY 1 3 2011

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

Respectfully submitted,

Begelman, Orlow & Melletz

By:_____

Marc M. Orlow, Esquire

-23-

# CHANGE OF STATUS

**S T A R**
**CAREER ACADEMY**

CAMPUS: _Exit_

Name: ~~[redacted]~~  Start Date: _4/5/10_ Date of Determination: _12/13/10_

Current Program: _DT_  Current Shift: AM  PM  Eve  Current Module: _Extern_

## Transfer to Another Shift (same program): An Enrollment Agreement Addendum must be completed

Program: _____  Date Effective: _____

Current Shift: ____ AM ____ PM ____ EVE ____  Hours Completed: _____

New Shift: ____ AM ____ PM ____ EVE ____  Hours Needed: _____

## Transfer to Another Program: An Enrollment Agreement Addendum must be completed

Original Program: _____ AM  PM  EVE

Original Start Date: _____ Hours Completed: _____

New Program: _____ AM  PM  EVE

New Mod Date: _____ Hours Needed to Complete: _____

## Leave of Absence: (Return from LOA on Separate Form)

LOA Start Date: _____ Expected Return Date (next module start): _____

New Graduation Date: _____ Hours Completed: _____

Course Returning to: _____ Hours Needed to Complete: _____

Reason: _____

## Repeat Module:

Module Failed: _____ Hours Passed: _____ Hours Needed: _____

New Projected Grad Date: _____ New LDIC: _____

## Terminated/Withdrawn:

Official Drop Date: _12/3/10_ Hours Completed: _600_

Reason for Termination: _Failure to progress on externship_
_Did no site_

## Graduate:

Graduation Date: _____ Externship Required  YES*  NO

*Externship Evaluation Attached.

Is student eligible to receive diploma based on current standing?  YES   NO

Executive Director: _[signature]_  Date: _12/13/10_

Director of Education: _[signature]_  Date: _1/13/10_

Registrar: _[signature]_  Date: _12/13/10_

White—Registrar   Canary—Corporate   Pink—FA

# STAR TECHNICAL INSTITUTE

## NEW JERSEY ENROLLMENT AGREEMENT

RETAIL INSTALLMENT CONTRACT/CONSUMER NOTE

RETAIL INSTALLMENT

ITEMIZATION OF AMOUNT FINANCED

SEE REVERSE SIDE FOR ADDITIONAL INFORMATION CONCERNING REFUND POLICY AND OTHER IMPORTANT PROVISIONS

## PROVISIONS OF THIS AGREEMENT

The applicant (1) agrees to abide by STAR TECHNICAL INSTITUTE (hereinafter referred to as STI) regulations during his/her period of attendance; (2) understands that non payment of tuition, failing grades, or unsatisfactory conduct may result in immediate dismissal; (3) agrees to make tuition payments as specified in this agreement with the understanding that absence from a regularly scheduled class does not relieve him/her of the liability and (4) agrees that it for any reason he/she cannot complete his/her course of study, he/she will discuss the matter with an official of STI prior to termination. If a student cancels or withdraws from classes, such notice must be given to the address noted on the reverse side by certified mail.

STI agrees to: (1) provide its facilities, staff, equipment and expertise for complete training in the course of study; (2) provide consultation services during and after the training period, and (3) assist students and alumni in initial job placement (though PLACEMENT CANNOT BE GUARANTEED).

Upon satisfactory completion of the program, STI will award a DIPLOMA in recognition of this achievement. A minimum final grade of 70% is required for graduation and all financial obligations must be settled.

STI reserves the right to change instruction, revise and/or change course outlines and lesson materials (to insure that current and future industry standards are met), and to make such other changes as the school deems advisable after approval by the proper authority — including merger of classes and revision of class schedules. In no event will any such change diminish the competency or content of any program or result in additional charges to the student.

## RETURN OF TITLE IV

Students will have their Title IV Federal Funds returned based upon a proportional calculation (return of funds) through the final 60% of the period charged. If a student has completed more than 60% of the period charged, there will not be any funds returned. At this point, the student has earned 100% of his or her Title IV eligibility. Tuition will be charged by period of enrollment rather than payment period for these students.

The school will determine the withdrawal date and then determine the percent of the period of enrollment attended by the student. The amount of the Title IV aid earned will be determined by multiplying total aid disbursed or eligible to be disbursed by the percentage of time attended. The amount of Title IV funds earned will then be compared to the amount received or eligible to be received. If the amount earned is greater than or equal to the amount disbursed, no return of funds is due. If the amount earned is greater than the amount disbursed, a post-withdrawal disbursement must be made if the student is eligible. If the amount earned is less than the amount disbursed, unearned funds will have to be returned to the appropriate Title IV program(s). All unearned funds will be refunded within 45 days from the date the school determined the student has withdrawn. Once the appropriate refunds have been made according to the Federal return of funds policy, the institution will then calculate the amount of tuition earned using the appropriate state policy.

## NEW JERSEY REFUND POLICY/CANCELLATION

All advance payments will be refunded in full if: 1) the applicant is not accepted by the school, or 2) the applicant cancels in writing within three (3) business days after signing by both parties, even if instruction has begun during the three (3) day period. If cancellation occurs beyond the three (3) days after signing of the enrollment agreement but before beginning of classes, the $100.00 registration fee will be retained. Tuition will be calculated as of the last day of attendance. Students who have not visited the school facility prior to enrollment will have the opportunity to withdraw without penalty within three (3) days following either attendance at a regularly scheduled orientation or touring a tour of the school facility and inspection of equipment. After commencement of classes, for programs 300 hours in length but not exceeding 1200 hours, the school may retain the registration fee, student services fee and cost for all books and supplies received by the student plus:

**Full-time Students (24 hours or more per week)**
a) 10% of the total tuition if withdrawal occurs in the first week; b) 20% of the total tuition if withdrawal occurs in the 2nd or 3rd week of the program; c) 45% of the total tuition if withdrawal occurs after the third week but prior to the completion of 25% of the program; d) 70% of the total tuition if withdrawal occurs after 25% of the program but within 50% of the program; e) 100% if withdrawal occurs after completing 50% of the program.

**Part-Time Students (less than 24 hours per week)**
a) 10% of the total tuition if withdrawal occurs within the first 25 hours of scheduled attendance; b) 20% of the total tuition if withdrawal occurs between 26 and 75 hours of scheduled attendance; c) 45% of the total tuition if withdrawal occurs after 75 hours but within 25% of the program; d) 70% of the total tuition if withdrawal occurs after 25% of the program but within 50% of the program; e) 100% if withdrawal occurs after completing 50% of the program.

In special cases, such as the death of the student, which make it impractical to complete the training, the school shall make a settlement which is fair and reasonable to both parties.

## PRIORITY OF REFUNDS

In the event the school has received an excess of funds on the student's account, the school will give priority to refunds as follows: 1) Unsubsidized Federal Stafford Loan; 2) Subsidized Federal Stafford Loan; 3) Unsubsidized Federal Direct Loan; 4) Subsidized Federal Direct Loan; 5) Federal Plus Loan; 6) Direct Plus Loan; 7) Federal Pell Grant; 8) Other Federal, State, private or institutional sources of aid; 9) the student.

The student will be billed if a balance is due to the school after the refunds have been calculated. Any remaining balances are due and payable in full immediately and are subject to 1½% interest per month on the unpaid balance, plus attorney's fees and collection costs. Please note: Examples of refund calculations are available in the Financial Aid Office.

## NOTICE OF CANCELLATION

This agreement shall not be binding until (3) business days have passed from the date of signing this agreement by both parties. If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled. To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice to STAR TECHNICAL INSTITUTE, 114 Cross Keys Road, Suite 101A, Berlin, NJ 08009 within 3 business days of the date of this contract.

## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance programs; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with the law concerning this creditor is the Federal Trade Commission, Washington, DC 20580.

It is the intention of Maker and Payee to conform strictly to applicable usury laws. Accordingly, if the transactions contemplated hereby would be usurious under applicable law (including the laws of the State of New Jersey and the laws of the United States of America), then, in that event, notwithstanding anything of the contrary in any agreement entered into in connection with it, it is agreed as follows: (i) the aggregate of all consideration which constitutes interest under applicable law that is contracted for, charged or received under this note or under any of the other aforesaid agreements or otherwise in connection with this note shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be credited on the note by the holder thereof (or, if this note shall have been paid in full, refunded to the Maker); and (ii) in the event that maturity of this note is accelerated by reason of an election by the holder thereof resulting from any default hereunder or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum amount allowed by applicable law, and excess interest, if any, provided for in this note or otherwise shall be cancelled automatically as of the date of such acceleration or prepayment and, if thereafore prepaid, shall be credited on this note (or, if this note shall have been paid in full, refunded to the Maker).

NOTICE: See reverse side for additional terms of contract

TREATMENT OF TITLE IV FUNDS WHEN A STUDENT WITHDRAWS FROM A CREDIT PROGRAM

EHT

| | | |
|---|---|---|
| STUDENTS NAME | | SOCIAL SECURITY NUMBER |
| DATE FORM COMPLETED | 12/22/2010 | DATE OF THE DETERMINATION THAT THE STUDENT WITHDREW |
| | | 12/13/2010 |

period used for calculation (check one)    [ ] payment period    [x] period of enrollment

Monetary amounts should be in dollars and cents (rounded to the nearest penny). Round to three decimal places when calculating percentages. For example,.4486 would be .449, or 44.9%.

### Step 1: Student's Title IV Aid Information

| | Net Amount Disbursed | Net Amount That Could Have Been Disbursed | | Amount Disbursed | Amount that could have been Disbursed | amount of stipend paid to student |
|---|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/Direct Stafford Loan | $0.00 | $0.00 | 5. Pell grant | $3,550.00 | $750.00 | $0.00 |
| 2. Subsidized FFEL/Direct Stafford Loan | $0.00 | $0.00 | 6. FSEOG | $0.00 | $0.00 | $0.00 |
| 3. Perkins Loan | $0.00 | $0.00 | 7. Other Title IV programs* | $0.00 | $0.00 | $0.00 |
| 4. FFEL/Direct PLUS | $0.00 | $0.00 | * Do not include FWS | $0.00 | $0.00 | $0.00 |

A. Total Title IV aid disbursed (NOT aid that could be disbused) for the payment period or period of enrollment    A  $3,550.00

B. Total of Title IV aid disbursed plus the Title IV aid that could have been disbursed for the payment period or period of enrollment    B  $4,300.00

### Step 2: Percentage of Title IV Earned

C. * If school is not required to take attendance and student withdrew notification, enter 50% in Box C and proceed to Step 3 OR school may enter a last date of attendance at an academically-related activity for "withdrawal date" and proceed from there.

| | | | | |
|---|---|---|---|---|
| | | | Total number of calander days entire program | 267 |
| * Withdrawal date | 9/29/2010 | | Total Number of calander day attempted | 178 |
| MENT PERIOD 1 | 4/5/2010 TO 1/6/2011 | | Total number of calander days in payment period 1 | 267 |
| | | | Total number of calander days in payment period 2 | N/A |
| | | | Total number of calander days in payment period 3 | N/A |

* Percentage of payment period or period of enrollment

Determine the calander days completed in the payment period or period of enrollment divided by the total calander days in the payment period or period of enrollment (exclude schedule breaks of 5 days or more AND days that the student was on approved leaves of absence).

| | | | | | | |
|---|---|---|---|---|---|---|
| 178 | / | 267 | = | 66.7% OF TERM 1 | C | 100.0% |
| N/A | / | N/A | = | N/A  OF TERM 2 | C | N/A |
| N/A | / | N/A | = | N/A  OF TERM 3 | C | N/A |

If this amount is less than or equal to 60%, enter the amount in Box C. If this amount is greater than 60% (with or without rounding), enter 100% in Box C.

### STEP 3: Amount of Title IV Aid Earned by the student

D. Percentage of Title IV aid earned (Box C) x the total of Title IV aid disbursed plus the Title IV aid that could have been disbursed for the payment period or period of enrollment (Box B)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | TERM 1 | 100.0% | x | $4,300.00 | = | D | $4,300.00 |
| | TERM 2 | N/A | x | N/A | = | D | N/A |
| | TERM 3 | N/A | x | N/A | = | D | N/A |
| | | Box C | | Box B | | | |

### Step 4: Total Title IV Aid to be Disbursed or Returned

If the amount in Box D is greater than the amount in Box A, go to item E. If the amount in Box A is greater than the amount in Box D, go to item F.    If the amounts in Boxes A and D are equal, STOP. no further action is necessary.

[ ] ost-withdrawal disbursement.    Subtract Title IV aid disbursed for the payment period or period of enrollment (Box A) from the amount of Title IV aid earned (Box D). This is the amount of the post-withdrawal disbursement due. Stop here and go to the post-withdrawal disbursement tracking sheet.

$4,300.00  -  $3,550.00  =  E  $750.00

Box D    Box A

**F: Title IV aid to be returned.** Subtract the amount of Title IV aid earned (Box D) from Title IV aid disbursed for the
payment period or period of enrollment (Box A). This is the amount of Title IV aid that must be returned.

| | | |
|---|---|---|
| $3,550.00 | - | $4,300.00 | = | F | $0.00 |
| Box A | | Box D | - | stipend | $0.00 |

**EP 5: Amount of Unearned Title IV Aid Due from the SCHOOL**

G. Institutional charges for the payment period or period of enrollment

| | | | | | | |
|---|---|---|---|---|---|---|
| Tuition | $15,108.00 | Other Fees | $425.00 | Other | $0.00 | |
| Registration Fee | $0.00 | Books | $311.00 | Other | $77.00 | |
| | | | | Total Institutional Charges | G | $15,921.00 |

H. Percentage of Title IV aid unearned (100%-Box C)

| | | |
|---|---|---|
| TERM 1 | H | 0.0% |
| TERM 2 | H | N/A |
| TERM 3 | H | N/A |

I. Multiply institutional charges for the payment period or period of enrollment (Box G) times the percentage of Title IV
aid unearned (Box H).

| | | | | | | |
|---|---|---|---|---|---|---|
| TERM 1 | $15,921.00 | x | 0.0% | = | I | $0.00 |
| TERM 2 | N/A | x | N/A | = | I | N/A |
| TERM 3 | N/A | x | N/A | = | I | N/A |
| | Box G | | Box H | | | |

| | | |
|---|---|---|
| J. Compare the amount of Title IV aid to be returned (Box F) to Box I and enter the lesser amount. | J | $0.00 |
| | - stipend | $0.00 |

**STEP 6: Return of Funds by the SCHOOL**

The school must return the unearned aid for which the school is responsible (Box J) by repaying funds to the following
sources, in order, up to the total net amount disbursed from each source.

| | Amount for School to Return | Award Year | | Amount for School to Return | Award Year |
|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/ Direct Stafford Loan | $0.00 | | 5. Pell Grant | $0.00 | |
| 2. Subsidized FFEL/Direct Stafford Loan | $0.00 | | 6. FSEOG | $0.00 | |
| 3. Perkins Loan | $0.00 | | 7. Other Title IV programs | $0.00 | |
| 4. FFEL/Direct PLUS | $0.00 | | | | |

**STEP 7: Initial Amount of Unearned Title IV Aid Due from the STUDENT**

K: Subract the amount of Title IV aid due from the school (Box J) from the amount of Title IV aid to be returned (Box F)

| | | |
|---|---|---|
| $0.00 | - | $0.00 | = | K | $0.00 |
| Box F | | Box J | | | |

**Step 8: Return of Funds by the STUDENT**

The student (or parent for a PLUS loan) must return unearned aid for which the student is respnsible (Box K) by repaying
funds to the following sources, in order, up to the total net amount disbursed from each source, after subtracting the
amount the school will return. Amounts to be returned to grants reduced by 50%.

| | Amount for Student to return | | Amount for Student to return | | |
|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/ Direct Staffod Loan* | $0.00 | 5. Pell Grant | $0.00 | x 50% | $0.00 |
| 2. Subsidized FFEL/Direct Stafford Loan * | $0.00 | 6. FSEOG | $0.00 | x 50% | $0.00 |
| 3. Perkins Loan* | $0.00 | 7. Other Title IV programs | $0.00 | | |
| 4. FFEL/Direct PLUS* | $0.00 | (X 50% for grant funds) | | | |

* Loan amounts are returned in accordance with the terms of the promissory note. No further action is required other
than notification to the holder of the loan of the student's withdrawal date.

Post-Withdrawal Disbursement Tracking Sheet

| STUDENTS NAME | ▮▮▮▮▮ | SOCIAL SECURITY NUMBER | ▮▮▮▮▮ |
|---|---|---|---|

Amount of Post-Withdrawal Disbursement

A. Amount from Box E of "Treatment of Title IV Funds When a STudent Withdrawals" Worksheet      A | $750.00

Post-withdrawal Disbursement Credited to student's Account

B. Total outstanding charges on student's account      B | $0.00

C. Total amount of post-withdrawal disbursement credited to student's account

      * Amount of post-withdrawal disbursement credited for tuition, fees,
        room and board (if student contracts with the institution)      $0.00

      * Amount of post-withdrawal disbursement credited for other
        current charges      +   $0.00

      * Amount of post-withdrawal disbursement credited for minor prior
        year charges      +   $0.00

                              Total Amount Credited to Account   C   | $0.00

D. Student and/or parent authorization to credit account for other current charges or minor prior year charges
   (if necessary) obtained on _____

E. If a post-withdrawal disbursement of loan funds is credited to account, date of notification to
      student and/or parent _____

Post-Withdrawal Disbursement Offered to Student/Parent

F. Total amount of post-withdrawal disbursement (Box A)- amount of post-withdrawal disbursement credited to
   student's account (Box C) = Total amount to offer to student/parent      F | $0.00

G. Notification sent to student and/or parent on _____

H Response received from student/parent on _____

   Response not received [ ]

I. Amount accepted      I [ ]

Post-withdrawal Disbursement Made From

| Pell Grant | $0.00 | Unsubsidized FFEL/ Direct Staffod Loan | $0.00 |
|---|---|---|---|
| FSEOG | $0.00 | Subsidized FFEL/Direct Stafford Loan | $0.00 |
| Other Title IV programs (grants) | $0.00 | Perkins Loan | $0.00 |
| | | FFEL/Direct PLUS | $0.00 |
| | | Other Title IV programs (loans) | $0.00 |

| | | | | |
|---|---|---|---|---|
| CAMPUS: | EGG HARBOR | | TUITION ONLY | $15,108.00 |
| DATE: | 12/22/2010 | X | % TO BE RETAINED | 0.00% |
| STUDENT NAME: | ▇▇▇▇ | X | % TO BE RETAINED | 0.00% |
| SOCIAL SECURITY NUMBER: | | X | % TO BE RETAINED | 0.00% |
| PROGRAM: | DT-Day | X | % TO BE RETAINED | 0.00% |
| START DATE: | 4/5/2010 | X | % TO BE RETAINED | 100.00% |
| NUMBER OF WEEKS IN PROGRAM | 37.5 | | TUITION TO RETAIN | $15,108.00 |
| NUMBER OF HOURS IN WEEK | 24 | = | REGISTRATION FEE | $0.00 |
| | | + | OTHER FEES | $425.00 |
| TOTAL # OF CLOCK HOURS FOR CLASS: | 900 | + | BOOKS, SUPP, EQUIP | $388.00 |
| DATE OF COS: | 12/13/2010 | - | BOOKS NOT ISSUED | $0.00 |
| LAST DAY ATTENDED: | 9/29/2010 | - | UNPAID CHARGES | N/A |
| HOURS PRESENT: | N/A | = | RETAINABLE FUNDS | $15,921.00 |
| HOURS SCHEDULED: | 600 | | TOTAL PD TO INST COSTS | $4,216.66 |
| | | - | RETAINABLE FUNDS | $15,921.00 |
| TOTAL TUITION ONLY | $15,108.00 | = | REFUND DUE | ($11,704.34) |
| REGISTRATION FEE + | $0.00 | | | |
| OTHER FEES + | $425.00 | | * IF REFUND DUE IS A NEGATIVE NUMBER- | |
| BOOKS, SUPPLIES, EQUIPMENT + | $388.00 | | SEND REFUND CALCULATION, FINANCE CARD | |
| TOTAL INSTITUTIONAL COSTS = | $15,921.00 | | & CHANGE OF STATUS TO CORPORATE | |

| | | |
|---|---|---|
| TOTAL AID PAID TO | PELL - | $3,550.00 |
| INSTITUTIONAL COSTS | STAFFORD SUB. - | $0.00 |
| | STAFFORD UNSUB. - | $0.00 |
| | WIA | $666.66 |
| | SEOG SCHOOL MATCH - | $0.00 |
| STUDUNT SCHEDULED CASH PAYMENTS | = | $11,704.34 |
| STUDENT CASH PD TO EDUC. EXPENSES | - | $0.00 |
| UNPAID CHARGES | = | $11,704.34 |

* DO NOT INCLUDE UNEARNED FUNDS IN THIS FIGURE

| | | |
|---|---|---|
| AMOUNT OF UNEARNED FUNDS | PELL | $0.00 |
| AMOUNT OF UNEARNED FUNDS | STAFFORD | $0.00 |
| AMOUNT OF UNEARNED FUNDS | UNSUB | $0.00 |
| AMOUNT OF UNEARNED FUNDS | PLUS | $0.00 |
| AMOUNT OF UNEARNED FUNDS | SEOG | $0.00 |

| | EARNED FUNDS | UNEARNED FUNDS | TOTAL OF ALL FUNDS | AWARD YEAR OF FUNDS |
|---|---|---|---|---|
| UNSUB | $0.00 | $0.00 | $0.00 | |
| STAFFORD | $0.00 | $0.00 | $0.00 | |
| PLUS | $0.00 | $0.00 | $0.00 | |
| PELL | $0.00 | $0.00 | $0.00 | |
| SEOG | $0.00 | $0.00 | $0.00 | |
| OTHER | $0.00 | $0.00 | $0.00 | |
| TOTAL | $0.00 | $0.00 | $0.00 | |

NAME OF BANK TO REFUND

| | |
|---|---|
| SUB/UNSUB/PLUS | |
| OTHER BANKS | |

| | |
|---|---|
| TOTAL TUITION AND FEES: | $15,921.00 |
| LESS TOTAL EDUC. CHARGES: | $15,921.00 |
| EQUALS UNEARNED TUITION AND FEES: | $0.00 |

## STAR CAREER ACADEMY

# CHANGE OF STATUS

CAMPUS: _EДIT_

Name: ▮▮▮▮▮▮▮▮▮▮   Start Date: _4/5/10_   Date of Determination: _12/13/10_

Current Program: _DT_   Current Shift: AM  PM  Eve   Current Module: _Extern_

### Transfer to Another Shift (same program): An Enrollment Agreement Addendum must be completed

Program: _____   Date Effective: _____

Current Shift: _____ AM _____ PM _____ EVE   Hours Completed: _____

New Shift: _____ AM _____ PM _____ EVE   Hours Needed: _____

### Transfer to Another Program: An Enrollment Agreement Addendum must be completed

Original Program: _____   AM   PM   EVE

Original Start Date: _____   Hours Completed: _____

New Program: _____   AM   PM   EVE

New Mod Date: _____   Hours Needed to Complete: _____

### Leave of Absence:  (Return from LOA on Separate Form)

LOA Start Date: _____   Expected Return Date (next module start): _____

New Graduation Date: _____   Hours Completed: _____

Course Returning to: _____   Hours Needed to Complete: _____

Reason: _____

### Repeat Module:

Module Failed: _____   Hours Passed: _____   Hours Needed: _____

New Projected Grad Date: _____   New LDIC: _____

### Terminated/Withdrawn:

Official Drop Date: _6/13/10_   Hours Completed: _1000_

Reason for Termination: _Failure to progress on externship_
_Due to no site_

### Graduate:

Graduation Date: _____   Externship Required:  YES*  NO

*Externship Evaluation Attached.

Is student eligible to receive diploma based on current standing?  YES  NO

Executive Director: _____   Date: _12/13/10_

Director of Education: _____   Date: _12/13/10_

Registrar: _____   Date: _12/13/10_

White—Registrar   Canary—Corporate   Pink—FA

SCA2 (05/10)

# STAR TECHNICAL INSTITUTE

## NEW JERSEY ENROLLMENT AGREEMENT

[redacted]

[redacted]

[redacted]

[redacted]

## RETAIL INSTALLMENT CONTRACT - CONSUMER NOTICE

[redacted]

**PROVISIONS OF THIS AGREEMENT**

The applicant (1) agrees to abide by STAR TECHNICAL INSTITUTE (hereinafter referred to as STI) regulations during his/her period of attendance; (2) agrees to make tuition payments as specified in this agreement with the understanding that non payment of tuition, failing grades, or unsatisfactory conduct, may result in immediate dismissal; (3) understands that absence from a regularly scheduled class does not relieve him/her of this liability; and (4) agrees that if for any reason he/she cannot continue his/her course of study, he/she will discuss the matter with an official of STI prior to termination. If a student cancels or withdraws from classes, such notice must be given to the address noted on the reverse side by certified mail.

STI agrees to: (1) provide its facilities, staff, equipment and expertise for complete training in the course of study; (2) provide consultation services during and after the training period, and (3) assist students and alumni in initial job placement (though **PLACEMENT CANNOT BE GUARANTEED**).

Upon satisfactory completion of the program, STI will award a DIPLOMA in recognition of this achievement. A minimum final grade of 70% is required for graduation and all financial obligations must be settled.

STI reserves the right to change instructors, revise and/or change course outlines and lesson materials (to insure that current and future industry standards are met), and to make such other changes as the school deems advisable after approval by the proper authority — including merger of classes and revision of class schedules. In no event will any such change diminish the competency or content of any program or result in additional charges to the student.

**RETURN OF TITLE IV**

Students will have their Title IV Federal Funds returned based upon a proportional calculation (return of funds) through the final 60% of the period charged. If a student has completed more than 60% of the period charged, there will not be any funds returned. At this point, the student has earned 100% of his or her Title IV eligibility. Tuition will be charged by period of enrollment rather than payment period for these students.

The school will determine the withdrawal date and then determine the percent of the period of enrollment attended by the student. The amount of Title IV aid earned will be determined by multiplying total aid disbursed or eligible to be disbursed by the percentage of time attended. The amount of Title IV funds earned will then be compared to the amount received or eligible to be received. If the amount earned is greater than or equal to the amount disbursed, no return of funds is due. If the amount earned is greater than the amount disbursed, a post-withdrawal disbursement must be made if the student is eligible. If the amount earned is less than the amount disbursed, unearned funds will have to be returned to the appropriate Title IV program(s). All unearned funds will be returned within 45 days from the date the school determined the student has withdrawn. Once the appropriate refunds have been made according to the Federal return of funds policy, the institution will then calculate the amount of tuition earned using the appropriate state policy.

**NEW JERSEY REFUND POLICY/CANCELLATION**

All advance payments will be refunded in full if: 1) the applicant is not accepted by the school, or 2) the applicant cancels in writing within three (3) business days after signing by both parties, even if instruction has begun during the three (3) day period. If cancellation occurs beyond the three (3) days after signing of the enrollment agreement but before beginning of classes, the $100.00 registration fee will be retained. Tuition will be calculated as of the last day of attendance. Students who have not visited the school facility prior to enrollment will have the opportunity to withdraw without penalty within three (3) days following either attendance at a regularly scheduled orientation or following a tour of the school facility and inspection of equipment. After commencement of classes, for programs 300 hours in length but not exceeding 1200 hours, the school may retain the registration fee, student services fee and cost for all books and supplies received by the student plus:

**Full-Time Students (24 hours or more per week)**
a) 10% of the total tuition if withdrawal occurs in the first week; b) 20% of the total tuition if withdrawal occurs in the 2nd or 3rd week of the program; c) 45% of the total tuition if withdrawal occurs after the third week but prior to the completion of 25% of the program; d) 70% of the total tuition if withdrawal occurs after 25% of the program but within 50% of the program; e) 100% if withdrawal occurs after completing 50% of the program.

**Part-Time Students (less than 24 hours per week)**
a) 10% of the total tuition if withdrawal occurs within the first 25 hours of scheduled attendance; b) 20% of the total tuition if withdrawal occurs between 26 and 75 hours of scheduled attendance; c) 45% of the total tuition if withdrawal occurs after 75 hours but within 25% of the program; d) 70% of the total tuition if withdrawal occurs after 25% of the program but within 50% of the program; e) 100% if withdrawal occurs after completing 50% of the program.

In special cases, such as the death of the student, which make it impractical to complete the training, the school shall make a settlement which is fair and reasonable to both parties.

**PRIORITY OF REFUNDS**

In the event the school has received an excess of funds on the student's account, the school will give priority to refunds as follows: 1) Unsubsidized Federal Stafford Loan; 2) Subsidized Federal Stafford Loan; 3) Unsubsidized Federal Direct Loan; 4) Subsidized Federal Direct Loan; 5) Federal Plus Loan; 6) Direct Plus Loan; 7) Federal Pell Grant; 8) Other Federal, State, private or institutional sources of aid; 9) the student.

The student will be billed if a balance is due to the school after the refunds have been calculated. Any remaining balances are due and payable in full immediately and are subject to 1½% interest per month on the unpaid balance, plus attorney's fees and collection costs. Please note: Examples of refund calculations are available in the Financial Aid Office.

**NOTICE OF CANCELLATION**

This agreement shall not be binding until (3) business days have passed from the date of signing this agreement by both parties. If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled. To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice to STAR TECHNICAL INSTITUTE, 114 Cross Keys Road, Suite 101A, Berlin, NJ 08009 within 3 business days of the date of this contract.

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance programs; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with the law concerning this creditor is the Federal Trade Commission, Washington, DC 20580.

It is the intention of Maker and Payee to conform strictly to applicable usury laws. Accordingly, if the transactions contemplated hereby would be usurious under applicable law (including the laws of the State of New Jersey and the laws of the United States of America), then, in that event, notwithstanding anything of the contrary in any agreement entered into in connection with, it is agreed as follows: (i) the aggregate of all consideration which constitutes interest under applicable law that is contracted for, charged or received under this note or under any of the other aforesaid agreements or otherwise in connection with this note shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be credited on the note by the holder thereof (or, if this note shall have been paid in full, refunded to the Maker); and (ii) in the event that maturity of this note is accelerated by reason of an election by the holder thereof resulting from any default hereunder or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum amount allowed by applicable law, and excess interest, if any, provided for in this note or otherwise shall be cancelled automatically as of the date of such acceleration or prepayment and, if theretofore prepaid, shall be credited on this note (or, if this note shall have been paid in full, refunded to the Maker).

NOTICE: See reverse side for additional terms of contract

STUDENTS NAME     SOCIAL SECURITY NUMBER

DATE FORM COMPLETED    12/22/2010    DATE OF THE DETERMINATION THAT THE STUDENT WITHDREW

12/13/2010

period used for calculation (check one)    [ ] payment period    [x] period of enrollment

Monetary amounts should be in dollars and cents (rounded to the nearest penny). Round to three decimal places when calculating percentages. For example,.4486 would be .449, or 44.9%.

**Step 1: Student's Title IV Aid Information**

| | Net Amount Disbursed | Net Amount That Could Have Been Disbursed | | Amount Disbursed | Amount that could have been Disbursed | amount of stipend paid to student |
|---|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/Direct Stafford Loan | $5,970.00 | $0.00 | 5. Pell grant | $5,450.00 | $1,388.00 | $0.00 |
| 2. Subsidized FFEL/Direct Stafford Loan | $3,484.00 | $173.00 | 6. FSEOG | $0.00 | $0.00 | $0.00 |
| 3. Perkins Loan | $0.00 | $0.00 | 7. Other Title IV programs* | $0.00 | $0.00 | $0.00 |
| 4. FFEL/Direct PLUS | $0.00 | $0.00 | * Do not include FWS | $0.00 | $0.00 | $0.00 |

A. Total Title IV aid disbursed (NOT aid that could have been disbused) for the payment period or period of enrollment    A | $14,904.00

B. Total of Title IV aid disbursed plus the Title IV aid that could have been disbursed for the payment period or period of enrollment    B | $16,465.00

**Step 2: Percentage of Title IV Earned**

C. * If school is not required to take attendance and student withdrew notification, enter 50% in Box C and proceed to Step 3 OR school may enter a last date of attendance at an academically-related activity for "withdrawal date" and proceed from there.

* Withdrawal date   9/29/2010    Total number of calander days entire program   267
MENT PERIOD 1   4/5/2010   TO   1/6/2011   Total Number of calander day attempted   178
Total number of calander days in payment period 1   267
Total number of calander days in payment period 2   N/A
Total number of calander days in payment period 3   N/A

* Percentage of payment period or period of enrollment

Determine the calander days completed in the payment period or period of enrollment divided by the total calander days in the payment period or period of enrollment (exclude schedule breaks of 5 days or more AND days that the student was on approved leaves of absence).

| 178 | / | 267 | = | 66.7% OF TERM 1 | C | 100.0% |
| N/A | / | N/A | = | N/A OF TERM 2 | C | N/A |
| N/A | / | N/A | = | N/A OF TERM 3 | C | N/A |

If this amount is less than or equal to 60%, enter the amount in Box C. If this amount is greater than 60% (with or without rounding), enter 100% in Box C.

**STEP 3: Amount of Title IV Aid Earned by the student**

D. Percentage of Title IV aid earned (Box C) x the total of Title IV aid disbursed plus the Title IV aid that could have been disbursed for the payment period or period of enrollment (Box B)

| | | | | | | |
|---|---|---|---|---|---|---|
| TERM 1 | 100.0% | x | $16,465.00 | = | D | $16,465.00 |
| TERM 2 | N/A | x | N/A | = | D | N/A |
| TERM 3 | N/A | x | N/A | = | D | N/A |
| | Box C | | Box B | | | |

**Step 4:Total Title IV Aid to be Disbursed or Returned**

If the amount in Box D is greater than the amount in Box A, go to item E. If the amount in Box A is greater than the amount in Box D, go to item F. If the amounts in Boxes A and D are equal, STOP. no further action is necessary.

st-withdrawal disbursement.   Subtract Title IV aid disbursed for the payment period or period of enrollment (Box A) from the amount of Title IV aid earned (Box D). This is the amount of the post-withdrawal disbursement due. Stop here and go to the post-withdrawal disbursement tracking sheet.   $16,465.00   -   $14,904.00   =   E   $1,561.00

Box D    Box A

Social Security Number

**F: Title IV aid to be returned.** Subtract the amount of Title IV aid earned (Box D) from Title IV aid disbursed for the payment period or period of enrollment (Box A). This is the amount of Title IV aid that must be returned.

| | | | | | | |
|---|---|---|---|---|---|---|
| | $14,904.00 | - | $16,465.00 | = | F | $0.00 |
| | Box A | | Box D | - | stipend | $0.00 |

**STEP 5: Amount of Unearned Title IV Aid Due from the SCHOOL**

**G.** Institutional charges for the payment period or period of enrollment

| | | | | | | |
|---|---|---|---|---|---|---|
| Tuition | $15,637.00 | Other Fees | $425.00 | Other | $0.00 | |
| Registration Fee | $0.00 | Books | $311.00 | Other | $92.00 | |
| | | | | Total Institutional Charges | G | $16,465.00 |

**H.** Percentage of Title IV aid unearned (100%-Box C)

| | | |
|---|---|---|
| TERM 1 | H | 0.0% |
| TERM 2 | H | N/A |
| TERM 3 | H | N/A |

**I.** Multiply institutional charges for the payment period or period of enrollment (Box G) times the percentage of Title IV aid unearned (Box H).

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| TERM 1 | $16,465.00 | x | 0.0% | = | I | $0.00 |
| TERM 2 | N/A | x | N/A | = | I | N/A |
| TERM 3 | N/A | x | N/A | = | I | N/A |
| | Box G | | Box H | | | |

**J.** Compare the amount of Title IV aid to be returned (Box F) to Box I and enter the lesser amount.

| | | |
|---|---|---|
| | J | $0.00 |
| | - stipend | $0.00 |

**STEP 6: Return of Funds by the SCHOOL**

The school must return the unearned aid for which the school is responsible (Box J) by repaying funds to the following sources, in order, up to the total net amount disbursed from each source.

| | Amount for School to Return | Award Year | | Amount for School to Return | Award Year |
|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/ Direct Staffod Loan | $0.00 | | 5. Pell Grant | $0.00 | |
| 2. Subsidized FFEL/Direct Stafford Loan | $0.00 | | 6. FSEOG | $0.00 | |
| 3. Perkins Loan | $0.00 | | 7. Other Title IV programs | $0.00 | |
| 4. FFEL/Direct PLUS | $0.00 | | | | |

**STEP 7: Initial Amount of Unearned Title IV Aid Due from the STUDENT**

K: Subract the amount of Title IV aid due from the school (Box J) from the amount of Title IV aid to be returned (Box F)

| | | | | | | |
|---|---|---|---|---|---|---|
| | $0.00 | - | $0.00 | = | K | $0.00 |
| | Box F | | Box J | | | |

**Step 8: Return of Funds by the STUDENT**

The student (or parent for a PLUS loan) must return unearned aid for which the student is respnsible (Box K) by repaying funds to the following sources, in order, up to the total net amount disbursed from each source, after subtracting the amount the school will return. Amounts to be returned to grants reduced by 50%.

| | Amount for Student to return | | Amount for Student to return | | |
|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/ Direct Staffod Loan* | $0.00 | 5. Pell Grant | $0.00 | x 50% | $0.00 |
| 2. Subsidized FFEL/Direct Stafford Loan * | $0.00 | 6. FSEOG | $0.00 | x 50% | $0.00 |
| 3. Perkins Loan* | $0.00 | 7. Other Title IV programs | $0.00 | | |
| 4. FFEL/Direct PLUS* | $0.00 | (X 50% for grant funds) | | | |

* Loan amounts are returned in accordance with the terms of the promissory note. No further action is required other than notification to the holder of the loan of the student's withdrawal date.

Post-Withdrawal Disbursement Tracking Sheet

STUDENTS NAME ███████████████     SOCIAL SECURITY NUMBER ███████████████

ount of Post-Withdrawal Disbursement

A. Amount from Box E of "Treatment of Title IV Funds When a STudent Withdrawals" Worksheet     A $1,561.00

**NOTE: Student did not meet requirement to have funds disbursed.**

Post-withdrawal Disbursement Credited to student's Account

B. Total outstanding charges on student's account     B $0.00

C. Total amount of post-withdrawal disbursement credited to student's account

        * Amount of post-withdrawal disbursement credited for tuition, fees,
        room and board (if student contracts with the institution)     $0.00

        * Amount of post-withdrawal disbursement credited for other
        current charges     + $0.00

        * Amount of post-withdrawal disbursement credited for minor prior
        year charges     + $0.00

        Total Amount Credited to Account     C     $0.00

D. Student and/or parent authorization to credit account for other current charges or minor prior year charges
(if necessary) obtained on _____|_____|_____

E. If a post-withdrawal disbursement of loan funds is credited to account, date of notification to
student and/or parent _____|_____|_____

Post-Withdrawal Disbursement Offered to Student/Parent

F. Total amount of post-withdrawal disbursement (Box A)- amount of post-withdrawal disbursement credited to
student's account (Box C) = Total amount to offer to student/parent     F $0.00

G. Notification sent to student and/or parent on _____|_____|_____

H Response received from student/parent on _____|_____|_____

   Response not received _____

I. Amount accepted     I _____

Post-withdrawal Disbursement Made From

| | | | | |
|---|---|---|---|---|
| Pell Grant | $0.00 | Unsubsidized FFEL/ Direct Staffod Loan | $0.00 |
| FSEOG | $0.00 | Subsidized FFEL/Direct Stafford Loan | $0.00 |
| Other Title IV programs (grants) | $0.00 | Perkins Loan | $0.00 |
| | | FFEL/Direct PLUS | $0.00 |
| | | Other Title IV programs (loans) | $0.00 |

EGG HARBOR

| | | |
|---|---|---|
| DATE: | 12/22/2010 | |
| STUDENT NAME: | | |
| SOCIAL SECURITY NUMBER: | | |
| PROGRAM: | DT-D | |
| START DATE: | 4/5/2010 | |
| NUMBER OF WEEKS IN PROGRAM | 37.5 | |
| NUMBER OF HOURS IN WEEK | 24 | |
| | | |
| TOTAL # OF CLOCK HOURS FOR CLASS: | 900 | |
| DATE OF COS: | 12/13/2010 | |
| LAST DAY ATTENDED: | 9/29/2010 | |
| HOURS PRESENT: | N/A | |
| HOURS SCHEDULED: | 600 | |

| | | |
|---|---|---|
| TUITION ONLY | | $15,637.00 |
| % TO BE RETAINED | | 0.00% |
| X % TO BE RETAINED | | 0.00% |
| X % TO BE RETAINED | | 0.00% |
| X % TO BE RETAINED | | 0.00% |
| X % TO BE RETAINED | | 100.00% |
| = TUITION TO RETAIN | | $15,637.00 |
| REGISTRATION FEE | | $0.00 |
| + OTHER FEES | | $425.00 |
| + BOOKS, SUPP, EQUIP | | $403.00 |
| - BOOKS NOT ISSUED | | $0.00 |
| - UNPAID CHARGES | | N/A |
| = RETAINABLE FUNDS | | $16,465.00 |
| TOTAL PD TO INST COSTS | | $14,904.00 |
| - RETAINABLE FUNDS | | $16,465.00 |
| = REFUND DUE | | ($1,561.00) |

| | | |
|---|---|---|
| TOTAL TUITION ONLY | | $15,637.00 |
| REGISTRATION FEE | + | $0.00 |
| OTHER FEES | + | $425.00 |
| BOOKS, SUPPLIES, EQUIPMENT | + | $403.00 |
| TOTAL INSTITUTIONAL COSTS | = | $16,465.00 |
| TOTAL AID PAID TO | PELL - | $5,450.00 |
| INSTITUTIONAL COSTS | STAFFORD SUB. - | $3,484.00 |
| | STAFFORD UNSUB. - | $5,970.00 |
| | SEOG | $0.00 |
| | SEOG SCHOOL MATCH - | $0.00 |
| STUDENT SCHEDULED CASH PAYMENTS | = | $1,561.00 |
| STUDENT CASH PD TO EDUC. EXPENSES | - | $0.00 |
| UNPAID CHARGES | = | $1,561.00 |

* DO NOT INCLUDE UNEARNED FUNDS IN THIS FIGURE

| | | |
|---|---|---|
| AMOUNT OF UNEARNED FUNDS | PELL | $0.00 |
| AMOUNT OF UNEARNED FUNDS | STAFFORD | $0.00 |
| AMOUNT OF UNEARNED FUNDS | UNSUB | $0.00 |
| AMOUNT OF UNEARNED FUNDS | PLUS | $0.00 |
| AMOUNT OF UNEARNED FUNDS | SEOG | $0.00 |

* IF REFUND DUE IS A NEGATIVE NUMBER-
SEND REFUND CALCULATION, FINANCE CARD
& CHANGE OF STATUS TO CORPORATE

| | EARNED FUNDS | UNEARNED FUNDS | TOTAL OF ALL FUNDS | AWARD YEAR OF FUNDS |
|---|---|---|---|---|
| UNSUB | $0.00 | $0.00 | $0.00 | |
| STAFFORD | $0.00 | $0.00 | $0.00 | |
| PLUS | $0.00 | $0.00 | $0.00 | |
| PELL | $0.00 | $0.00 | $0.00 | |
| SEOG | $0.00 | $0.00 | $0.00 | |
| OTHER | $0.00 | $0.00 | $0.00 | |
| TOTAL | $0.00 | $0.00 | $0.00 | |

NAME OF BANK TO REFUND

| SUB/UNSUB/PLUS | |
| OTHER BANKS | |

| | |
|---|---|
| TOTAL TUITION AND FEES: | $16,465.00 |
| LESS TOTAL EDUC. CHARGES: | $16,465.00 |
| EQUALS UNEARNED TUITION AND FEES: | $0.00 |

3

# CHANGE OF STATUS

CAMPUS: _____

**Name:** ███████████   Start Date: _____ Date of Determination: _____

**Current Program:** _____ **Current Shift:** AM  PM  Eve   **Current Module:** _____

**Transfer to Another Shift (same program):** An Enrollment Agreement Addendum must be completed

Program: _____   Date Effective: _____

Current Shift: _____ AM _____ PM _____ EVE   Hours Completed: _____

New Shift: _____ AM _____ PM _____ EVE   Hours Needed: _____

**Transfer to Another Program:** An Enrollment Agreement Addendum must be completed

Original Program: _____  AM  PM  EVE

Original Start Date: _____   Hours Completed: _____

New Program: _____  AM  PM  EVE

New Mod Date: _____   Hours Needed to Complete: _____

**Leave of Absence: (Return from LOA on Separate Form)**

LOA Start Date: _____   Expected Return Date (next module start): _____

New Graduation Date: _____   Hours Completed: _____

Course Returning to: _____   Hours Needed to Complete: _____

Reason: _____

**Repeat Module:**

Module Failed: _____  Hours Passed: _____  Hours Needed: _____

New Projected Grad Date: _____  New LDIC: _____

**Terminated/Withdrawn:**

Official Drop Date: 9/29/10   Hours Completed: 660

Reason for Termination: Failor to progress externship Due to hostile

**Graduate:**

Graduation Date: _____   Externship Required: YES*  NO

*Externship Evaluation Attached.

Is student eligible to receive diploma based on current standing?  YES  NO

Executive Director: _____   Date: 12/13/10

Director of Education: _____   Date: 12/13/10

Registrar: _____   Date: 12/13/10

White—Registrar   Canary—Corporate   Pink—FA

SCA2 (05/10)

## PROVISIONS OF THIS AGREEMENT

The applicant (1) agrees to abide by STAR CAREER ACADEMY (hereinafter referred to as SCA) regulations during his/her period of attendance; SCA has the right to cancel/terminate the student's enrollment based on the following circumstances: 1) failure to maintain Satisfactory Academic Progress; and 2) Student Conduct that is detrimental to the student and/or school (Note: These points are discussed in detail within the school's Official School Catalogue)(2) understands that nonpayment of tuition, taking grades, or unsatisfactory conduct, may result in immediate dismissal, (3) agrees to make tuition payments as specified in this agreement with the understanding that absence from regularly scheduled class does not relieve him/her of this liability and (4) agrees that if for any reason he/she cannot continue his/her course of study, he/she will discuss the matter with an official of SCA prior to termination. If a student cancels or withdraws from classes, such notice must be given to the address noted on the reverse side by certified mail. (5) SCA is not extending an offer of employment as a condition for the student applying for and receiving financial aid. (6) The applicant agrees that the financial terms and duties under this agreement may be sold or assigned by SCA to a third party without notice to the applicant at any time; and acknowledges that upon approval, it may be immediately assigned.

STAR CAREER ACADEMY agrees to: (1) provide its facilities, staff, equipment and expertise to complete training in the course of study; (2) provide consultation services during and after the training period; and (3) assist students and alumni in initial job placement (though PLACEMENT CANNOT BE GUARANTEED). Upon satisfactory completion of the program STAR CAREER ACADEMY will award a DIPLOMA in recognition of research requirements. A minimum final grade of 70% is required for graduation. Each school catalog and all financial obligations must be settled and meet 70% search requirements. STAR CAREER ACADEMY reserves the right to revise course outlines, textbooks and/or change instructors, and to make such other changes as the school deems advisable. Changes in tuition, fees and other charges shall require a 60-day advance notice.

## CANCELLATION OF ENROLLMENT

The application/registration fee is fully refundable if the student requests cancellation within five (5) calendar days after signing the enrollment agreement or application if no classes have been attended. A request for cancellation shall be confirmed in writing by the student within ten (10) calendar days of signing the agreement or application. A student canceling after the fifth calendar day following the date of enrollment but prior to the beginning of classes shall be refunded all monies paid except the application/registration fee of $100.00. An applicant rejected by the school shall be entitled to a refund of all monies paid. Students who have not visited the school facility prior to enrollment will have the opportunity to withdraw without penalty within three (3) days following either attendance at a regularly scheduled orientation or following a tour of the school facility and inspection of equipment.

## RETURN OF TITLE IV

Students will have their Title IV Federal Funds returned based upon a proportional calculation (return of funds) through the final 60% of the period charged. If a student has completed more than 60% of the period charged, there will not be any funds returned. At this point the student has earned 100% of his or her Title IV eligibility. Tuition will be charged by period of enrollment rather than payment period for these students. The school will determine the withdrawal date and then determine the percent of the period of enrollment attended by the student. The amount of the Title IV aid earned will be determined by multiplying total aid disbursed or aid able to be disbursed by the percentage of time attended. The amount of Title IV funds earned will then be compared to the amount received or eligible to be received. If the amount earned is greater than or equal to the amount disbursed; no return of funds is due. If the amount earned is greater than the amount disbursed, a post-withdrawal disbursement must be made. If the student is eligible. If the amount earned is less than the amount disbursed, unearned funds will have to be returned to the appropriate Title IV program(s). All unearned funds will be refunded within 45 days from the date the school determined the student has withdrawn. Once the appropriate refunds have been made according to the Federal return of funds policy, the institution will then calculate the amount of tuition earned using the appropriate state policy.

## NEW JERSEY REFUND POLICY/CANCELLATION

All advance payments will be refunded if: 1) the applicant is not accepted by the school; or 2) the applicant cancels in writing within three (3) business days after signing by both parties, even if instruction has begun during the three (3) day period. If cancellation occurs beyond the three (3) days after signing of the enrollment agreement but before beginning of classes, the $100.00 registration fee will be retained. Tuition will be calculated as of the last day of attendance. Students who have not visited the school facility prior to enrollment will have the opportunity to withdraw without penalty within three (3) days following either attendance at a regularly scheduled orientation or following a tour of the school facility and inspection of equipment. After commencement of classes for programs 300 hours in length but not exceeding 1200 hours, the school may retain the registration fee, student services fee and cost for all books and supplies received by the student plus:

Full-Time Students (24 hours or more per week)
a) 10% of the total tuition if withdrawal occurs in the first week; b) 20% of the total tuition if withdrawal occurs in the 2nd or 3rd week of the program; c) 45% of the total tuition if withdrawal occurs after the third week, but prior to the completion of 25% of the program; d) 70% of the total tuition if withdrawal occurs after 25% of the program but within 50% of the program; e) 100% if withdrawal occurs after completing 50% of the program.

Part-Time Students (less than 24 hours per week)
a) 10% of the total tuition if withdrawal occurs within the first 25 hours of scheduled attendance; b) 20% of the total tuition if withdrawal occurs between 26 and 75 hours of scheduled attendance; c) 45% of the total tuition if withdrawal occurs after 75 hours but within 25% of the program; d) 70% of the total tuition if withdrawal occurs after 25% of the program but within 50% of the program; e) 100% if withdrawal occurs after completing 50% of the program.

SPECIAL CASES: Such as the death of the student, which makes it impractical to complete the training, the school shall make a settlement which is fair and reasonable to both parties.

When a student fails to attend school for a significant time, a special letter (Letter of Withdraw) is sent advising the student they are being dropped from the program. Unless the student returns or makes contact with the school immediately, the student will be considered a withdraw as of the date of the letter.

## PRIORITY OF REFUNDS

In the event, the school has received an excess of funds, on the student's account, the school will give priority to refunds as follows: 1) Unsubsidized Federal Stafford Loan; 2) Subsidized Federal Stafford Loan; 3) Unsubsidized Federal Direct Loan; 4) Subsidized Federal Direct Loan; 5) Federal Plus Loan; 6) Federal PLUS Loan; 7) Federal Pell Grant; 8) Other Federal, State (private or institutional sources of aid); 9) the student. The student will be billed if a balance is due to the school after the refunds have been calculated. Any remaining balances are due and payable in full immediately and are subject to 1½% interest per month on the unpaid balance, plus attorney's fees and collection costs. Please note: Examples of refund calculations are available in the Financial Aid Office.

## NOTICE OF CANCELLATION

This agreement shall not be binding until (a) business days have passed from the date of signing this agreement by both parties. If you cancel, any property traded in any payments made by you under the contract or sale and any negotiable instrument executed by you will be returned within ten business days following receipt by the seller of your cancellation notice; and any security interest arising out of the transaction, will be cancelled. To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice to STAR CAREER ACADEMY, 114 Cross Keys Road, Suite (01A) Berlin, NJ 08009 within 3 business days of the date of this contract.

## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Federal Trade Consumer Credit Protection Act. The Federal agency that administers compliance with the law concerning this creditor is the Federal Trade Commission, Washington, DC 20620.

It is the intention of Maker and Payee to conform strictly to applicable usury laws. Accordingly, if the transactions contemplated hereby would be usurious under applicable law (including the laws of the State of New Jersey and the laws of the United States of America), then, in that event, notwithstanding anything to the contrary in any agreement entered into in connection with, it is agreed as follows: (i) the aggregate of all consideration which constitutes interest under applicable law that is contracted for, charged or received under this note or under any of the other aforesaid agreements or otherwise in connection with this note shall under no circumstances exceed the maximum amount of interest allowed by applicable law and any excess shall be credited on the note by the holder thereof (or, if this note shall have been paid in full, refunded to the Maker); and (ii) in the event that maturity of this note is accelerated by reason of an election by the holder thereof resulting from any default hereunder or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum amount allowed by applicable law, and excess interest, if any, provided for in this note or otherwise shall be cancelled automatically as of the date of such acceleration or prepayment and, if theretofore prepaid, shall be credited on this note (or, if this note shall have been paid in full, refunded to the Maker).

NOTICE: See reverse side for additional terms of contract

| STUDENTS NAME | | SOCIAL SECURITY NUMBER | |
| --- | --- | --- | --- |

| DATE FORM COMPLETED | 12/20/2010 | DATE OF THE DETERMINATION THAT THE STUDENT WITHDREW |
| --- | --- | --- |
| | | 12/13/2010 |

od used for calculation (check one)        [ ] payment period        [ x ] period of enrollment

Monetary amounts should be in dollars and cents (rounded to the nearest penny).  Round to three decimal places when calculating percentages.  For example,.4486 would be .449, or 44.9%.

**Step 1: Student's Title IV Aid Information**

NOTE: NO TITLE IV

| | Net Amount Disbursed | Net Amount That Could Have Been Disbursed | | Amount Disbursed | Amount that could have been Disbursed | amount of stipend paid to student |
| --- | --- | --- | --- | --- | --- | --- |
| 1. Unsubsidized FFEL/Direct Stafford Loan | $0.00 | $0.00 | 5. Pell grant | $5,450.00 | $1,388.00 | $0.00 |
| 2. Subsidized FFEL/Direct Stafford Loan | $0.00 | $0.00 | 6. FSEOG | $0.00 | $0.00 | $0.00 |
| 3. Perkins Loan | $0.00 | $0.00 | 7. Other Title IV programs* | $0.00 | $0.00 | $0.00 |
| 4. FFEL/Direct PLUS | $0.00 | $0.00 | * Do not include FWS | $0.00 | $0.00 | $0.00 |

A. Total Title IV aid disbursed (NOT aid that could have been disbused) for the payment period
   or period of enrollment                                                                                 | A | $5,450.00 |

B. Total of Title IV aid disbursed plus the Title IV aid that could have been disbursed for the
   payment period or period of enrollment                                                           | B | $6,838.00 |

**Step 2: Percentage of Title IV Earned**

C. * If school is not required to take attendance and student withdrew notification, enter 50% in Box C and proceed to
   Step 3 OR school may enter a last date of attendance at an academically-related activity for "withdrawal date" and proceed from there.

| | | | |
| --- | --- | --- | --- |
| * Withdrawal date | 9/29/2010 | Total number of calander days entire program | 267 |
| | | Total Number of calander day attempted | 178 |
| PAYMENT PERIOD 1 | 4/5/2010 TO 1/6/2011 | Total number of calander days in payment period 1 | 267 |
| | | Total number of calander days in payment period 2 | N/A |
| | | Total number of calander days in payment period 3 | N/A |

* Percentage of payment period or period of enrollment

Determine the calander days completed in the payment period or period of enrollment divided by the total
calander days in the payment period or period of enrollment (exclude schedule breaks of 5 days or more
AND days that the student was on approved leaves of absence).

| 178 | / | 267 | = | 66.7% OF TERM 1 | C | 100.0% |
| --- | --- | --- | --- | --- | --- | --- |
| N/A | / | N/A | = | N/A | OF TERM 2 | C | N/A |
| N/A | / | N/A | = | N/A | OF TERM 3 | C | N/A |

If this amount is less than or equal to 60%, enter the amount in Box C. If this amount is greater than 60%
(with or without rounding), enter 100% in Box C.

**STEP 3: Amount of Title IV Aid Earned by the student**

D. Percentage of Title IV aid earned (Box C) x the total of Title IV aid disbursed plus the Title IV aid that could have been
   disbursed for the payment period or period of enrollment (Box B)

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| TERM 1 | 100.0% | x | $6,838.00 | = | D | $6,838.00 |
| TERM 2 | N/A | x | N/A | = | D | N/A |
| TERM 3 | N/A | x | N/A | = | D | N/A |
| | Box C | | Box B | | | |

**Step 4:Total Title IV Aid to be Disbursed or Returned**

If the amount in Box D is greater than the amount in Box A, go to item E. If the amount in Box A is greater than the amount
in Box D, go to item F.          If the amounts in Boxes A and D are equal, STOP. no further action is necessary.

F      st-withdrawal disbursement.          Subtract Title IV aid disbursed for the payment period or period of enrollment (Box A)
    the amount of Title IV aid earned (Box D). This is the amount of the post-withdrawal disbursement due. Stop here
and go to the post-withdrawal disbursement tracking sheet.

| $6,838.00 | - | $5,450.00 | = | E | $1,388.00 |
| --- | --- | --- | --- | --- | --- |
| Box D | | Box A | | | |

**F: Title IV aid to be returned.** Subtract the amount of Title IV aid earned (Box D) from Title IV aid disbursed for the payment period or period of enrollment (Box A). This is the amount of Title IV aid that must be returned.

| | | | | | | |
|---|---|---|---|---|---|---|
| $5,450.00 | - | $6,838.00 | = | F | | $0.00 |
| Box A | | Box D | - | stipend | | $0.00 |

**STEP 5: Amount of Unearned Title IV Aid Due from the SCHOOL**

G. Institutional charges for the payment period or period of enrollment

| | | | | | | |
|---|---|---|---|---|---|---|
| Tuition | $15,637.00 | Other Fees | $425.00 | Other | $0.00 | |
| Registration Fee | $0.00 | Books | $311.00 | Other | $92.00 | |
| | | | | Total Institutional Charges | G | $16,465.00 |

H. Percentage of Title IV aid unearned (100%-Box C)

| | | |
|---|---|---|
| TERM 1 | H | 0.0% |
| TERM 2 | H | N/A |
| TERM 3 | H | N/A |

I. Multiply institutional charges for the payment period or period of enrollment (Box G) times the percentage of Title IV aid unearned (Box H).

| | | | | | | |
|---|---|---|---|---|---|---|
| TERM 1 | $16,465.00 | x | 0.0% | = | I | $0.00 |
| TERM 2 | N/A | x | N/A | = | I | N/A |
| TERM 3 | N/A | x | N/A | = | I | N/A |
| | Box G | | Box H | | | |

J. Compare the amount of Title IV aid to be returned (Box F) to Box I and enter the lesser amount.

| | | |
|---|---|---|
| | J | $0.00 |
| | - stipend | $0.00 |

**STEP 6: Return of Funds by the SCHOOL**

The school must return the unearned aid for which the school is responsible (Box J) by repaying funds to the following sources, in order, up to the total net amount disbursed from each source.

| | Amount for School to Return | Award Year | | Amount for School to Return | Award Year |
|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/ Direct Staffod Loan | $0.00 | | 5. Pell Grant | $0.00 | |
| 2. Subsidized FFEL/Direct Stafford Loan | $0.00 | | 6. FSEOG | $0.00 | |
| 3. Perkins Loan | $0.00 | | 7. Other Title IV programs | $0.00 | |
| 4. FFEL/Direct PLUS | $0.00 | | | | |

**STEP 7: Initial Amount of Unearned Title IV Aid Due from the STUDENT**

K: Subract the amount of Title IV aid due from the school (Box J) from the amount of Title IV aid to be returned (Box F)

| | | | | | |
|---|---|---|---|---|---|
| $0.00 | - | $0.00 | = | K | $0.00 |
| Box F | | Box J | | | |

**Step 8: Return of Funds by the STUDENT**

The student (or parent for a PLUS loan) must return unearned aid for which the student is respnsible (Box K) by repaying funds to the following sources, in order, up to the total net amount disbursed from each source, after subtracting the amount the school will return. Amounts to be returned to grants reduced by 50%.

| | Amount for Student to return | | Amount for Student to return | | |
|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/ Direct Staffod Loan* | $0.00 | 5. Pell Grant | $0.00 | x 50% | $0.00 |
| 2. Subsidized FFEL/Direct Stafford Loan * | $0.00 | 6. FSEOG | $0.00 | x 50% | $0.00 |
| 3. Perkins Loan* | $0.00 | 7. Other Title IV programs | $0.00 | | |
| 4. FFEL/Direct PLUS* | $0.00 | (X 50% for grant funds) | | | |

*Loan amounts are returned in accordance with the terms of the promissory note. No further action is required other than notification to the holder of the loan of the student's withdrawal date.

Post-Withdrawal Disbursement Tracking Sheet

| STUDENTS NAME | ████████ | SOCIAL SECURITY NUMBER | ████████ |
|---|---|---|---|

**Amount of Post-Withdrawal Disbursement**

A. Amount from Box E of "Treatment of Title IV Funds When a STudent Withdrawals" Worksheet          A | $1,388.00
NOTE:  STUDENT DID NOT REACH 3RD MID POINT

**Post-withdrawal Disbursement Credited to student's Account**

B. Total outstanding charges on student's account          B | $0.00

C. Total amount of post-withdrawal disbursement credited to student's account

* Amount of post-withdrawal disbursement credited for tuition, fees,
  room and board (if student contracts with the institution)          $0.00

* Amount of post-withdrawal disbursement credited for other
  current charges          +          $0.00

* Amount of post-withdrawal disbursement credited for minor prior
  year charges          +          $0.00

Total Amount Credited to Account     C          $0.00

D. Student and/or parent authorization to credit account for other current charges or minor prior year charges
   (if necessary) obtained on

E. If a post-withdrawal disbursement of loan funds is credited to account, date of notification to
   student and/or parent

**Post-Withdrawal Disbursement Offered to Student/Parent**

F. Total amount of post-withdrawal disbursement (Box A)- amount of post-withdrawal disbursement credited to
   student's account (Box C) = Total amount to offer to student/parent          F | $0.00

G. Notification sent to student and/or parent on

H  Response received from student/parent on

   Response not received

I.  Amount accepted          I

**Post-withdrawal Disbursement Made From**

| Pell Grant | $0.00 | Unsubsidized FFEL/ Direct Staffod Loan | $0.00 |
|---|---|---|---|
| FSEOG | $0.00 | Subsidized FFEL/Direct Stafford Loan | $0.00 |
| Other Title IV programs (grants) | $0.00 | Perkins Loan | $0.00 |
| | | FFEL/Direct PLUS | $0.00 |
| | | Other Title IV programs (loans) | $0.00 |

| | | | | |
|---|---|---|---|---|
| | | TUITION ONLY | $15,637.00 | |
| DATE: | | % TO BE RETAINED | 0.00% | |
| STUDENT NAME: | X | % TO BE RETAINED | 0.00% | |
| SOCIAL SECURITY NUMBER: | X | % TO BE RETAINED | 0.00% | |
| PROGRAM: DT-D | X | % TO BE RETAINED | 0.00% | |
| START DATE: 4/5/2010 | X | % TO BE RETAINED | 100.00% | |
| NUMBER OF WEEKS IN PROGRAM 37.5 | | TUITION TO RETAIN | $15,637.00 | |
| NUMBER OF HOURS IN WEEK 24 | = | REGISTRATION FEE | $0.00 | |
| | + | OTHER FEES | $425.00 | |
| TOTAL # OF CLOCK HOURS FOR CLASS: 900 | + | BOOKS, SUPP, EQUIP | $403.00 | |
| DATE OF COS: 12/13/2010 | - | BOOKS NOT ISSUED | $0.00 | |
| LAST DAY ATTENDED: 9/29/2010 | - | UNPAID CHARGES | N/A | |
| HOURS PRESENT: N/A | = | RETAINABLE FUNDS | $16,465.00 | |
| HOURS SCHEDULED: 600 | | TOTAL PD TO INST COSTS | $14,077.00 | |
| | | RETAINABLE FUNDS | $16,465.00 | |
| TOTAL TUITION ONLY $15,637.00 | = | REFUND DUE | ($2,388.00) | |

| | | |
|---|---|---|
| REGISTRATION FEE | + | $0.00 |
| OTHER FEES | + | $425.00 |
| BOOKS, SUPPLIES, EQUIPMENT | + | $403.00 |
| TOTAL INSTITUTIONAL COSTS | = | $16,465.00 |

* IF REFUND DUE IS A NEGATIVE NUMBER-
SEND REFUND CALCULATION, FINANCE CARD
& CHANGE OF STATUS TO CORPORATE

| | | |
|---|---|---|
| TOTAL AID PAID TO | PELL - | $5,450.00 |
| INSTITUTIONAL COSTS | STAFFORD SUB. - | $0.00 |
| | STAFFORD UNSUB. - | $0.00 |
| | AGENCY | $3,828.00 |
| | SCHOLARSHIP - | $4,799.00 |
| STUDUNT SCHEDULED CASH PAYMENTS | = | $2,388.00 |
| STUDENT CASH PD TO EDUC. EXPENSES | - | $0.00 |
| UNPAID CHARGES | = | $2,388.00 |

* DO NOT INCLUDE UNEARNED FUNDS IN THIS FIGURE

| | | | | TOTAL OF | AWARD |
|---|---|---|---|---|---|
| | | EARNED | UNEARNED | ALL | YEAR |
| | | FUNDS | FUNDS | FUNDS | OF FUNDS |
| UNSUB | | $0.00 | $0.00 | $0.00 | |
| STAFFORD | | $0.00 | $0.00 | $0.00 | |
| PLUS | | $0.00 | $0.00 | $0.00 | |
| PELL | | $0.00 | $0.00 | $0.00 | |
| SEOG | | $0.00 | $0.00 | $0.00 | |
| OTHER | | $0.00 | $0.00 | $0.00 | |
| TOTAL | | $0.00 | $0.00 | $0.00 | |

| | | |
|---|---|---|
| AMOUNT OF UNEARNED FUNDS | PELL | $0.00 |
| AMOUNT OF UNEARNED FUNDS | STAFFORD | $0.00 |
| AMOUNT OF UNEARNED FUNDS | UNSUB | $0.00 |
| AMOUNT OF UNEARNED FUNDS | PLUS | $0.00 |
| AMOUNT OF UNEARNED FUNDS | SEOG | $0.00 |

NAME OF BANK TO REFUND

| | |
|---|---|
| SUB/UNSUB/PLUS | |
| OTHER BANKS | |

| | |
|---|---|
| TOTAL TUITION AND FEES: | $16,465.00 |
| LESS TOTAL EDUC. CHARGES: | $16,465.00 |
| EQUALS UNEARNED TUITION AND FEES: | $0.00 |

4

★ STAR
CAREER ACADEMY

## CHANGE OF STATUS

CAMPUS: _CH_

Name: ████████████████    Start Date: _4/5/10_   Date of Determination: _12/3/10_

Current Program: _DI_   Current Shift: AM  PM  Eve   Current Module: _Intern_

### Transfer to Another Shift (same program): An Enrollment Agreement Addendum must be completed

Program: _____   Date Effective: _____

Current Shift: _____ AM _____ PM _____ EVE   Hours Completed: _____

New Shift: _____ AM _____ PM _____ EVE   Hours Needed: _____

### Transfer to Another Program: An Enrollment Agreement Addendum must be completed

Original Program: _____  AM  PM  EVE

Original Start Date: _____   Hours Completed: _____

New Program: _____  AM  PM  EVE

New Mod Date: _____   Hours Needed to Complete: _____

### Leave of Absence: (Return from LOA on Separate Form)

LOA Start Date: _____   Expected Return Date (next module start): _____

New Graduation Date: _____   Hours Completed: _____

Course Returning to: _____   Hours Needed to Complete: _____

Reason: _____

### Repeat Module:

Module Failed: _____   Hours Passed: _____   Hours Needed: _____

New Projected Grad Date: _____   New LDIC: _____

### Terminated/Withdrawn:

Official Drop Date: _12/9/10_   Hours Completed: _600_

Reason for Termination: _Failure to progress. An extension_
_Due to no site_

### Graduate:

Graduation Date: _____   Externship Required: YES* NO

*Externship Evaluation Attached.

Is student eligible to receive diploma based on current standing?  YES   NO

Executive Director: _D Smith_   Date: _12/3/10_

Director of Education: _____   Date: _12/3/10_

Registrar: _K Buchanon_   Date: _12/3/10_

White—Registrar   Canary—Corporate   Pink—FA

_L Sm__   _12/13/10_
_Professional call 12/13/10 Mrs Allen_

SCA2 (05/10)



## PROVISIONS OF THIS AGREEMENT

The applicant (1) agrees to abide by STAR CAREER ACADEMY (hereinafter referred to as SCA) regulations during his/her period of attendance; SCA has the right to cancel/terminate the student's enrollment based on the following circumstances: (1) failure to maintain Satisfactory Academic Progress, and 2) Student Conduct that is detrimental to the student and/or school (Note: these points are discussed in detail within the school's Official School Catalogue), (2) Understands that nonpayment of tuition, failing grades, or unsatisfactory conduct, may result in immediate dismissal; (3) agrees to make tuition payments as specified in this agreement with the understanding that absence from regularly scheduled class does not relieve him/her of this liability; and (4) agrees that if any reason he/she cannot continue his/her course of study, he/she will discuss the matter with an official of SCA prior to termination. If a student cancels or withdraws from classes, such notice must be given to the address noted on the reverse side by certified mail. (5) SCA is not extending an offer of employment as a condition for the student applying for and receiving financial aid. (6) The applicant agrees that the financial rights and duties under this agreement may be sold or assigned by SCA to a third party without notice to the applicant at any time; and acknowledges that upon approval, it may be immediately assigned.

STAR CAREER ACADEMY agrees to: (1) provide its facilities, staff equipment and expertise to complete training in the course of study; (2) provide consultation services during and after the training period; and (3) assist students and alumni in initial job placement (though PLACEMENT CANNOT BE GUARANTEED). Upon satisfactory completion of the program STAR CAREER ACADEMY will award a DIPLOMA in recognition of this achievement. A minimum final grade of 70% is required for graduation (see school catalog) and all financial obligations must be settled and meet job search requirements. STAR CAREER ACADEMY reserves the right to revise course outlines, textbooks and/or change instructors, and to make such other changes as the school deems advisable. Changes in tuition, fees and other charges that require a 60-day advance notice.

## CANCELLATION OF ENROLLMENT

The application/enrollment fee is non-refundable if the student requests cancellation within five (5) calendar days after signing the enrollment agreement or application if no classes have been attended. A request for cancellation shall be confirmed in writing by the student within ten (10) calendar days of signing the agreement or application. A student canceling after the fifth calendar day following the date of enrollment, but prior to the beginning of classes, shall be refunded all monies paid except the application/registration fee of $100.00. An applicant rejected by the school shall be entitled to a refund of all monies paid. Students who have not visited the school facility prior to enrollment will have the opportunity to withdraw without penalty within three (3) days following either attendance at a regularly scheduled orientation or following a tour of the school facility and inspection of equipment.

## RETURN OF TITLE IV

Students will have their use IV Federal Funds returned based upon a proportional calculation (return of funds) through the final 60% of the period charged. If a student has completed more than 60% of the period charged, there will not be any funds returned. At this point, the student has earned 100% of his or her Title IV eligibility. Tuition will be charged by period of enrollment rather than payment period by the student. The amount of the school will determine the withdrawal date and then determine the percent of the period of enrollment attended by the percentage of time attended. The amount of the Title IV aid earned will be determined by multiplying total aid disbursed or eligible to be disbursed by the percentage of time attended. If the amount earned is greater than or equal to the amount of Title IV funds earned will then be compared to the amount (received or eligible to be received). If the amount disbursed, a post-withdrawal disbursement must be made. If the return of funds is due if the amount earned is greater than the amount disbursed, unearned funds will have to be returned to the appropriate Title IV program(s). All unearned funds will be returned within 45 days from the date the school determined the student has withdrawn. Once the appropriate refunds have been made according to the Federal return of funds policy, the institution will then calculate the amount of tuition earned using the appropriate state policy.

## NEW JERSEY REFUND POLICY/CANCELLATION

All advance payments will be refunded in full if: 1) the applicant is not accepted by the school; or 2) the applicant cancels in writing within three (3) business days after signing it but before beginning of classes even if instruction has begun during the three (3) day period. If cancellation occurs beyond the three (3) days after signing of the enrollment agreement but before beginning of classes the $100.00 registration fee will be retained. Tuition will be calculated as of the last day of attendance. Students who have not visited the school facility prior to enrollment will have the opportunity to withdraw without penalty within three (3) days following either attendance at a regularly scheduled orientation or following a tour of the school facility and inspection of equipment. After commencement of classes, for programs 300 hours in length but not exceeding 1200 hours, the school may retain the registration fee, student services fee and cost for all books and supplies received by the student plus:

Full-Time Students (24 hours or more per week) –
a) 20% of the total tuition if withdrawal occurs in the first week; b) 20% of the total tuition if withdrawal occurs in the 2nd or 3rd week of the program; c) 45% of the total tuition if withdrawal occurs after the third week but prior to the completion of 25% of the program; d) 70% of the total tuition if withdrawal occurs after completing 50% of the program; e) 100% if withdrawal occurs after completing 50% of the program.

Part-Time Students (less than 24 hours per week) –
a) 20% of the total tuition if withdrawal occurs within the first 25 hours of scheduled attendance; b) 20% of the total tuition if withdrawal occurs between 25 and 75 hours of scheduled attendance; c) 45% of the total tuition if withdrawal occurs after 75 hours but within 25% of the program; d) 70% of the total tuition if withdrawal occurs after 25% of the program but within 50% of the program; e) 100% if withdrawal occurs after completing 50% of the program.

In special cases, such as the death of the student, which make it impractical to complete the training, the school shall make a settlement which is fair and reasonable to both parties.

SPECIAL CASES: Such as the death of the student, which makes it impractical to complete the training, the school shall make a settlement which is fair and reasonable to both parties.

When a student fails to attend school for a significant time, a special letter (Letter of Withdrawal) is sent advising the student they are being dropped for the program. Unless the student returns or makes contact with the school immediately, the student will be considered a withdraw as of the date of the letter.

## PRIORITY OF REFUNDS

In the event the school has received an excess of funds on the student's account, the school will give priority to refunds as follows: 1) Unsubsidized Federal Stafford Loan, 2) Subsidized Federal Stafford Loan, 3) Unsubsidized Federal Direct Loan, 4) Subsidized Federal Direct Loan, 5) Federal Plus Loan, 6) Direct Plus Loan, 7) Federal Pell Grant, 8) Other Federal, State, private or institutional sources of aid; 9) the student.

The student will be billed if a balance is due to the school and the refunds have been calculated. Any remaining balances are due and payable in full immediately and are subject to 1½% interest per month on the unpaid balance, plus attorney's fees and collection costs. Please note: Examples of refund calculations are available in the Financial Aid Office.

## NOTICE OF CANCELLATION

This agreement shall not be binding until (3) business days have passed from the date of signing this agreement by both parties. If you cancel, any property traded in, any payments made by you under the contract or sale and any negotiable instrument executed by you will be returned within ten (10) business days following receipt by the seller of your cancellation notice; and any security interest arising out of the transaction will be cancelled. To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice to STAR CAREER ACADEMY, 114 Cross Keys Road, Suite 101A, Berlin, NJ 08009 within 3 business days of the date of this contract.

## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status age (provided that the applicant has the capacity to enter a binding contract); because all or part of the applicant's income derives from any public assistance programs; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with the law concerning the creditor is: the Federal Trade Commission, Washington, DC 20580.

It is the intention of Maker and Payee to conform strictly to applicable usury laws. Accordingly, if the transactions contemplated hereby would be usurious under applicable law, including the laws of the State of New Jersey and the laws of the United States of America; then, in that event, notwithstanding anything of the contrary in any agreement entered into in connection with it, it is agreed as follows: (i) the aggregate of all consideration which constitutes interest under applicable law that is contracted for, charged or received under this note or under any of the other aforesaid agreements or otherwise in connection with this note shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be credited on the note by the holder thereof (or, if this note shall have been paid in full, refunded to the Maker); and (ii) in the event that maturity of this note is accelerated by reason of an election by the holder thereof resulting from any default hereunder or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum amount allowed by applicable law, and excess interest, if any, provided for in this note or otherwise shall be cancelled automatically as of the date of such acceleration or prepayment and, if theretofore prepaid, shall be credited on this note (or, if this note shall have been paid in full, refunded to the Maker).

NOTICE: See reverse side for additional terms of contract.

| | |
|---|---|
| STUDENTS NAME | SOCIAL SECURITY NUMBER |
| DATE FORM COMPLETED 12/20/2010 | DATE OF THE DETERMINATION THAT THE STUDENT WITHDREW 12/13/2010 |

period used for calculation (check one)  [ ] payment period  [x] period of enrollment

Monetary amounts should be in dollars and cents (rounded to the nearest penny). Round to three decimal places when calculating percentages. For example,.4486 would be .449, or 44.9%.

**Step 1: Student's Title IV Aid Information**

| | Net Amount Disbursed | Net Amount That Could Have Been Disbursed | | Amount Disbursed | Amount that could have been Disbursed | amount of stipend paid to student |
|---|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/Direct Stafford Loan | $4,240.00 | $784.00 | 5. Pell grant | $5,450.00 | $1,388.00 | $0.00 |
| 2. Subsidized FFEL/Direct Stafford Loan | $3,484.00 | $1,121.00 | 6. FSEOG | $0.00 | $0.00 | $0.00 |
| 3. Perkins Loan | $0.00 | $0.00 | 7. Other Title IV programs* | $0.00 | $0.00 | $0.00 |
| 4. FFEL/Direct PLUS | $0.00 | $0.00 | * Do not include FWS | $0.00 | $0.00 | $0.00 |

A. Total Title IV aid disbursed (NOT aid that could have been disbused) for the payment period or period of enrollment **A $13,174.00**

B. Total of Title IV aid disbursed plus the Title IV aid that have been disbursed for the payment period or period of enrollment **B $16,467.00**

**Step 2: Percentage of Title IV Earned**

C. * If school is not required to take attendance and student withdrew notification, enter 50% in Box C and proceed to Step 3 OR school may enter a last date of attendance at an academically-related activity for "withdrawal date" and proceed from there.

Withdrawal date 9/29/2010
MENT PERIOD 1   4/5/2010   TO 1/6/2011

| | |
|---|---|
| Total number of calander days entire program | 267 |
| Total Number of calander day attempted | 178 |
| Total number of calander days in payment period 1 | 267 |
| Total number of calander days in payment period 2 | N/A |
| Total number of calander days in payment period 3 | N/A |

* Percentage of payment period or period of enrollment

Determine the calander days completed in the payment period or period of enrollment divided by the total calander days in the payment period or period of enrollment (exclude schedule breaks of 5 days or more AND days that the student was on approved leaves of absence).

| | | | | | | |
|---|---|---|---|---|---|---|
| 178 | / | 267 | = | 66.7% OF TERM 1 | C | 100.0% |
| N/A | / | N/A | = | N/A OF TERM 2 | C | N/A |
| N/A | / | N/A | = | N/A OF TERM 3 | C | N/A |

If this amount is less than or equal to 60%, enter the amount in Box C. If this amount is greater than 60% (with or without rounding), enter 100% in Box C.

**STEP 3: Amount of Title IV Aid Earned by the student**

D. Percentage of Title IV earned (box C) x the total of Title IV aid disbursed plus the Title IV aid that could have been disbursed for the payment period or period of enrollment (Box B)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| TERM 1 | 100.0% | x | $16,467.00 | = | D | $16,467.00 |
| TERM 2 | N/A | x | N/A | = | D | N/A |
| TERM 3 | N/A | x | N/A | = | D | N/A |
| | Box C | | Box B | | | |

**Step 4:Total Title IV Aid to be Disbursed or Returned**

If the amount in Box D is greater than the amount in Box A, go to item E. If the amount in Box A is greater than the amount in Box D, go to item F. If the amountsIn Boxes A and D are equal, STOP. no further action is necessary.

st-withdrawal disbursement. Subtract Title IV aid disbursed for the payment period or period of enrollment (Box A) from the amount of Title IV aid earned (Box D). This is the amount of the post-withdrawal disbursement due. Stop here and go to the post-withdrawal disbursement tracking sheet. **$16,467.00 - $13,174.00 = E $3,293.00**
| | Box D | | Box A | | | |

**F: Title IV aid to be returned.** Subtract the amount of Title IV aid earned (Box D) from Title IV aid disbursed for the payment period or period of enrollment (Box A). This is the amount of Title IV aid that must be returned.

| | | | | |
|---|---|---|---|---|
| $13,174.00 | - | $16,467.00 | = F | $0.00 |
| Box A | | Box D - | stipend | $0.00 |

**P 5: Amount of Unearned Title IV Aid Due from the SCHOOL**

G. Institutional charges for the payment period or period of enrollment

| | | | | | | |
|---|---|---|---|---|---|---|
| Tuition | $15,637.00 | Other Fees | $425.00 | Other | $0.00 | |
| Registration Fee | $0.00 | Books | $311.00 | Other | $92.00 | |
| | | | | Total Institutional Charges | G | $16,465.00 |

H. Percentage of Title IV aid unearned (100%-Box C)

| | | |
|---|---|---|
| TERM 1 | H | 0.0% |
| TERM 2 | H | N/A |
| TERM 3 | H | N/A |

I. Multiply institutional charges for the payment period or period of enrollment (Box G) times the percentage of Title IV aid unearned (Box H).

| | | | | | | |
|---|---|---|---|---|---|---|
| TERM 1 | $16,465.00 | x | 0.0% | = I | $0.00 |
| TERM 2 | N/A | x | N/A | = I | N/A |
| TERM 3 | N/A | x | N/A | = I | N/A |
| | Box G | | Box H | | |

J. Compare the amount of Title IV aid to be returned (Box F) to Box I and enter the lesser amount.

| | | |
|---|---|---|
| | J | $0.00 |
| | - stipend | $0.00 |

## STEP 6: Return of Funds by the SCHOOL

The school must return the unearned aid for which the school is responsible (Box J) by repaying funds to the following sources, in order, up to the total net amount disbursed from each source.

| | Amount for School to Return | Award Year | | Amount for School to Return | Award Year |
|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/ Direct Stafford Loan | $0.00 | | 5. Pell Grant | $0.00 | |
| 2. Subsidized FFEL/Direct Stafford Loan | $0.00 | | 6. FSEOG | $0.00 | |
| 3. Perkins Loan | $0.00 | | 7. Other Title IV programs | $0.00 | |
| 4. FFEL/Direct PLUS | $0.00 | | | | |

## STEP 7: Initial Amount of Unearned Title IV Aid Due from the STUDENT

K: Subract the amount of Title IV aid due from the school (Box J) from the amount of Title IV aid to be returned (Box F)

| | | | |
|---|---|---|---|
| $0.00 | - | $0.00 | = K | $0.00 |
| Box F | | Box J | |

## Step 8: Return of Funds by the STUDENT

The student (or parent for a PLUS loan) must return unearned aid for which the student is respnsible (Box K) by repaying funds to the following sources, in order, up to the total net amount disbursed from each source, after subtracting the amount the school will return. Amounts to be returned to grants reduced by 50%.

| | Amount for Student to return | | Amount for Student to return | | |
|---|---|---|---|---|---|
| 1. Unsubsidized FFEL/ Direct Staffod Loan* | $0.00 | 5. Pell Grant | $0.00 | x 50% | $0.00 |
| 2. Subsidized FFEL/Direct Stafford Loan * | $0.00 | 6. FSEOG | $0.00 | x 50% | $0.00 |
| 3. Perkins Loan* | $0.00 | 7. Other Title IV programs | $0.00 | | |
| 4. FFEL/Direct PLUS* | $0.00 | (X 50% for grant funds) | | | |

\* Loan amounts are returned in accordance with the terms of the promissory note. No further action is required other than n otification to the holder of the loan of the student's withdrawal date.

## Post-Withdrawal Disbursement Tracking Sheet

STUDENTS NAME _____   SOCIAL SECURITY NUMBER _____

ount of Post-Withdrawal Disbursement

A. Amount from Box E of "Treatment of Title IV Funds When a STudent Withdrawals" Worksheet   A| $3,293.00

**NOTE:  STUDENT DID NOT REACH 3RD MID POINT**

**Post-withdrawal Disbursement Credited to student's Account**

B. Total outstanding charges on student's account   B| $0.00

C. Total amount of post-withdrawal disbursement credited to student's account

* Amount of post-withdrawal disbursement credited for tuition, fees,
  room and board (if student contracts with the institution)   $0.00

* Amount of post-withdrawal disbursement credited for other
  current charges   + $0.00

* Amount of post-withdrawal disbursement credited for minor prior
  year charges   + $0.00

Total Amount Credited to Account   C   $0.00

D. Student and/or parent authorization to credit account for other current charges or minor prior year charges
(if necessary) obtained on   _____|_____|_____

E. If a post-withdrawal disbursement of loan funds is credited to account, date of notification to
student and/or parent   _____|_____|_____

**Post-Withdrawal Disbursement Offered to Student/Parent**

F. Total amount of post-withdrawal disbursement (Box A)- amount of post-withdrawal disbursement credited to
student's account (Box C) = Total amount to offer to student/parent   F| $0.00

G. Notification sent to student and/or parent on   _____|_____|_____

H  Response received from student/parent on   _____|_____|_____

Response not received   _____

I.  Amount accepted   I|_____

Post-withdrawal Disbursement Made From

| | | | |
|---|---|---|---|
| Pell Grant | $0.00 | Unsubsidized FFEL/ Direct Staffod Loan | $0.00 |
| FSEOG | $0.00 | Subsidized FFEL/Direct Stafford Loan | $0.00 |
| Other Title IV programs (grants) | $0.00 | Perkins Loan | $0.00 |
| | | FFEL/Direct PLUS | $0.00 |
| | | Other Title IV programs (loans) | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| CAMPUS: | EGG HARBOR | | | TUITION ONLY | $15,637.00 |
| DATE: | 12/20/2010 | | X | % TO BE RETAINED | 0.00% |
| STUDENT NAME: | | | X | % TO BE RETAINED | 0.00% |
| SOCIAL SECURITY NUMBER: | | | X | % TO BE RETAINED | 0.00% |
| PROGRAM: | DT-D | | X | % TO BE RETAINED | 0.00% |
| START DATE: | 4/5/2010 | | X | % TO BE RETAINED | 100.00% |
| NUMBER OF WEEKS IN PROGRAM | 37.5 | | | TUITION TO RETAIN | $15,637.00 |
| NUMBER OF HOURS IN WEEK | 24 | | = | REGISTRATION FEE | $0.00 |
| | | | + | OTHER FEES | $425.00 |
| TOTAL # OF CLOCK HOURS FOR CLASS: | 900 | | + | BOOKS, SUPP, EQUIP | $403.00 |
| DATE OF COS: | 12/13/2010 | | - | BOOKS NOT ISSUED | $0.00 |
| LAST DAY ATTENDED: | 9/29/2010 | | - | UNPAID CHARGES | N/A |
| HOURS PRESENT: | N/A | | = | RETAINABLE FUNDS | $16,465.00 |
| HOURS SCHEDULED: | 600 | | | TOTAL PD TO INST COSTS | $13,174.00 |
| | | | - | RETAINABLE FUNDS | $16,465.00 |
| TOTAL TUITION ONLY | $15,637.00 | | = | REFUND DUE | ($3,291.00) |

| | | |
|---|---|---|
| REGISTRATION FEE | + | $0.00 |
| OTHER FEES | + | $425.00 |
| BOOKS, SUPPLIES, EQUIPMENT | + | $403.00 |
| TOTAL INSTITUTIONAL COSTS | = | $16,465.00 |
| TOTAL AID PAID TO | PELL - | $5,450.00 |
| INSTITUTIONAL COSTS | STAFFORD SUB. - | $3,484.00 |
| | STAFFORD UNSUB. - | $4,240.00 |
| | SEOG | $0.00 |
| | SEOG SCHOOL MATCH - | $0.00 |
| STUDUNT SCHEDULED CASH PAYMENTS | = | $3,291.00 |
| STUDENT CASH PD TO EDUC. EXPENSES | - | $0.00 |
| UNPAID CHARGES | = | $3,291.00 |

\* DO NOT INCLUDE UNEARNED FUNDS IN THIS FIGURE

| | | |
|---|---|---|
| AMOUNT OF UNEARNED FUNDS | PELL | $0.00 |
| AMOUNT OF UNEARNED FUNDS | STAFFORD | $0.00 |
| AMOUNT OF UNEARNED FUNDS | UNSUB | $0.00 |
| AMOUNT OF UNEARNED FUNDS | PLUS | $0.00 |
| AMOUNT OF UNEARNED FUNDS | SEOG | $0.00 |

\* IF REFUND DUE IS A NEGATIVE NUMBER-
  SEND REFUND CALCULATION, FINANCE CARD
  & CHANGE OF STATUS TO CORPORATE

| | EARNED FUNDS | UNEARNED FUNDS | TOTAL OF ALL FUNDS | AWARD YEAR OF FUNDS |
|---|---|---|---|---|
| UNSUB | $0.00 | $0.00 | $0.00 | |
| STAFFORD | $0.00 | $0.00 | $0.00 | |
| PLUS | $0.00 | $0.00 | $0.00 | |
| PELL | $0.00 | $0.00 | $0.00 | |
| SEOG | $0.00 | $0.00 | $0.00 | |
| OTHER | $0.00 | $0.00 | $0.00 | |
| TOTAL | $0.00 | $0.00 | $0.00 | |

NAME OF BANK TO REFUND

| | |
|---|---|
| SUB/UNSUB/PLUS | |
| OTHER BANKS | |

| | |
|---|---|
| TOTAL TUITION AND FEES: | $16,465.00 |
| LESS TOTAL EDUC. CHARGES: | $16,465.00 |
| EQUALS UNEARNED TUITION AND FEES: | $0.00 |

5

**STAR**
CAREER ACADEMY

# CHANGE OF STATUS

CAMPUS: _EHT_

Name: ████████████████  Start Date: _4/5/10_ Date of Determination: _10/13/10_

Current Program: _DT_  Current Shift: AM PM Eve  Current Module: _Extern_

**Transfer to Another Shift (same program):** An Enrollment Agreement Addendum must be completed

Program: _____  Date Effective: _____

Current Shift: ___AM ___PM ____EVE  Hours Completed: _____

New Shift: ___AM ___PM ____EVE  Hours Needed: _____

**Transfer to Another Program:** An Enrollment Agreement Addendum must be completed

Original Program: _____  AM  PM  EVE

Original Start Date: _____  Hours Completed: _____

New Program: _____  AM  PM  EVE

New Mod Date: _____  Hours Needed to Complete: _____

**Leave of Absence: (Return from LOA on Separate Form)**

LOA Start Date: _____  Expected Return Date (next module start): _____

New Graduation Date: _____  Hours Completed: _____

Course Returning to: _____  Hours Needed to Complete: _____

Reason: _____

**Repeat Module:**

Module Failed: _____  Hours Passed: _____  Hours Needed: _____

New Projected Grad Date: _____  New LDIC: _____

**Terminated/Withdrawn:**

Official Drop Date: _9/29/10_  Hours Completed: _600_

Reason for Termination: _Failure to progress on externship_
_Due to no site_

**Graduate:**

Graduation Date: _____  Externship Required: YES* NO

*Externship Evaluation Attached.

Is student eligible to receive diploma based on current standing? YES  NO

Executive Director: _KSmith_  Date: _12/13/10_

Director of Education: _____  Date: _12/13/10_

Registrar: _____  Date: _12/13/10_

White—Registrar  Canary—Corporate  Pink—FA

_12/13/10_

_per conference call 12/13/10 - M + Colleen_

SCA2 (05/10)

 

## Return Form

✓ **Re-Entry**                                        ____ **Return from LOA**

**THIS FORM MUST BE SIGNED OFF BY REGISTRAR, FINANCIAL AID, CAREER SERVICES, AND ACADEMIC DEPARTMENT CHAIR BEFORE A STUDENT MAY RETURN TO ACTIVE STATUS.**

Student's Name: ████████████████        SS#: ____-__-____

Original Program: _____ DT _____   Shift: Day   Campus: ___ EHT ___

**Program Returning To:**                               **Hrs. Completed:** _1000_

Insurance & Health Information Technology ___AM ___PM ___EVE
Medical Assisting ___AM ___PM ___EVE                **Hrs. Needed to Complete:** _300_
Cardiology Technician ___AM ___PM ___EVE
Dialysis Technician ___AM ___PM ___EVE
Surgical Technology ___AM ___PM ___EVE
Commercial Cooking ___AM ___PM ___EVE
Professional Cooking ___AM ___PM ___EVE
Professional Baking ___AM ___PM ___EVE
Hotel & Restaurant Management ___AM ___PM ___EVE
Paramedic/EMT ___AM ___EVE

Original Start Date: _4/5/10_   Return Date: _1/10/11_   New Graduation Date: _9/2/11_

Last Mod Completed: _Dial 905_   Mod Returning To: _Extern_

Registrar/ DOE/ Chair Signature: _____   Date: _2/2/11_
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
**Step 1 – Department Chair/DOE**                    Signature: _____   Date: _2/2/11_
✓ Student assessed for return
✓ Student returning to: _Ext_
✓ Student prepared for first day back to school
✓ Books, scrubs, shoes & supplies are accounted for/Or Ordered

**Step 2 – Career Services (Extern Purposes)**       Signature: _____   Date: _____
____ Student's Site: _____
____ Externship Return Date: _____
____ Student prepared with necessary externship and Career Services paperwork
____ Student has completed all necessary medical paperwork (if applicable)

**Step 3 – Registrar/DOE/Chair**                     Signature: _K Kuchinski_   Date: _2/1/11_
✓ Academic record reviewed   **Ensure program will not exceed 1.5X
✓ Attendance or Participation record reviewed
✓ Contact information checked/updated in CampusVue/Student Database

**Step 4 – Financial Aid**                           Signature: _____   Date: _____
____ Financial aid file reviewed (current)
____ Refund Calculation Reviewed
____ New FAFSA Needed/Completed
____ Verification Completed          ____ $C_z$ Code Documentation Completed

Student Signature: _Edward Wright_                   Date: _2-1-11_

**PROVISIONS OF THIS AGREEMENT.**
The applicant (1) agrees to abide by STAR CAREER ACADEMY (hereinafter referred to as SCA) regulations during his/her period of attendance, "SCA has the right to cancel/terminate the student's enrollment based on the following circumstances 1) failure to maintain Satisfactory Academic Progress; and 2) Student Conduct that is detrimental to the student and/or school (Note: These points are discussed in detail within the school's Official School Catalogue). (2) Understands that nonpayment of tuition, failing grades, (or unsatisfactory conduct, may result in immediate dismissal; (3) agrees to make tuition payments as specified in this agreement with the understanding that absence from regularly scheduled class does not relieve him/her of this liability; and (4) agrees that if for any reason he/she cannot continue his/her course of study, he/she will discuss the matter with an official of SCA prior to termination; if a student cancels or withdraws from classes, such notice must be given to the school and receiving financial aid. (6) The applicant agrees that (5) SCA is not extending an offer of employment as a condition for the student applying for and receiving financial aid. (6) The applicant agrees that the financial, rights and duties under this agreement may be sold or assigned by SCA to a third party without notice to the applicant at any time, and acknowledges that, upon approval, it may be immediately assigned.

STAR CAREER ACADEMY agrees to: (1) provide its facilities, staff, equipment and expertise to complete training in the course of study, (2) provide consultation services during and after the training period, and (3) assist students and alumni in initial job placement (though PLACEMENT CANNOT BE GUARANTEED). Upon satisfactory completion of the program, STAR CAREER ACADEMY will award a DIPLOMA in recognition of this achievement. A minimum final grade of 70% is required for graduation (see school catalog) and all financial obligations must be settled and meet job search requirements. STAR CAREER ACADEMY reserves the right to revise course outlines, textbooks and/or change instructors, and to make such other changes as the school deems advisable. Changes in tuition, fees and other charges shall require a 60-day advance notice.

**CANCELLATION OF ENROLLMENT.**
The application/registration fee is fully refundable if the student requests cancellation within five (5) calendar days after signing the enrollment agreement or application if no classes have been attended. A request for cancellation shall be confirmed in writing by the student within ten (10) calendar days of signing the agreement or application. A student canceling after the fifth calendar day, following the date of enrollment, but prior to the beginning of classes, shall be refunded all monies paid except the application/registration fee of $100.00. An applicant rejected by the school shall be entitled to a refund of all monies paid. Students who have not visited the school facility prior to enrollment will have the opportunity to withdraw without penalty within three (3) days following either attendance at a regularly scheduled orientation or following a tour of the school facility and inspection of equipment.

**RETURN OF TITLE IV.**
Students will have their Title IV Federal Funds returned based upon a proportional calculation (return of funds) through the final 60% of the period charged. If a student has completed more than 60% of the period charged, there will not be any funds returned. At this point, the student has earned 100% of his or her Title IV eligibility. Tuition will be charged by period of enrollment rather than payment period for these students. The school will determine the withdrawal date and then determine the percent of the period of enrollment attended by the student. The amount of the Title IV aid earned will be determined by multiplying total aid disbursed or eligible to be disbursed by the percentage of time attended. The amount of Title IV funds earned will then be compared to the amount received or eligible to be received. If the amount earned is greater than or equal to the amount disbursed, no return of funds is due; if the amount earned is greater than the amount disbursed, a post-withdrawal disbursement must be made. If the student is eligible, if the amount earned is less than the amount disbursed, unearned funds will have to be returned to the appropriate Title IV program(s). All unearned funds will be returned within 45 days from the date the school determined the student has withdrawn. Once the appropriate refunds have been made according to the Federal return of funds policy, the institution will then calculate the amount of tuition earned using the appropriate state policy.

**NEW JERSEY REFUND POLICY/CANCELLATION.**
All advance payments will be refunded in full if; 1) the applicant is not accepted by the school, or 2) the applicant cancels in writing within three (3) business days after signing by both parties, even if instruction has begun during the three (3) day period. If cancellation occurs beyond the three (3) days after signing of the enrollment agreement but before beginning of classes, the $100.00 registration fee will be retained. Tuition will be calculated as of the last day of attendance. Students who have not visited the school facility prior to enrollment will have the opportunity to withdraw without penalty within three (3) days following either attendance at a regularly scheduled orientation or following a tour of the school facility and inspection of equipment. After commencement of classes, for programs 300 hours in length but not exceeding 1200 hours, the school may retain the registration fee, student services fee and cost for all books and supplies received by the student plus:

Full-Time Students (24 hours or more per week):
a) 10% of the total tuition if withdrawal occurs in the first week; b) 20% of the total tuition if withdrawal occurs in the 2nd or 3rd week of the program; c) 45% of the total tuition if withdrawal occurs after the third week but prior to the completion of 25% of the program; d) 70% of the total tuition if withdrawal occurs after 25% of the program but within 50% of the program; e) 100% if withdrawal occurs after completing 50% of the program.

Part-Time Students (less than 24 hours per week):
a) 10% of the total tuition if withdrawal occurs within the first 25 hours of scheduled attendance; b) 20% of the total tuition if withdrawal occurs between 26 and 75 hours of scheduled attendance; c) 45% of the total tuition if withdrawal occurs after 75 hours but within 25% of the program or d) 70% of the total tuition if withdrawal occurs after 25% of the program but within 50% of the program; e) 100% if withdrawal occurs after completing 50% of the program.

In special cases, such as the death of the student, which make it impractical to complete the training, the school shall make a settlement which is fair and reasonable to both parties.

**SPECIAL CASES:** Such as the death of the student, which makes it impractical to complete the training, the school shall make a settlement which is fair and reasonable to both parties.
When a student fails to attend school for a significant test, a special letter (Letter of Withdraw) is sent advising the student they are being dropped for the program. Unless the student returns or makes contact with the school immediately, the student will be considered a withdraw as of the date of the letter.

**PRIORITY OF REFUNDS.**
In the event the school has received an excess of funds on the student's account, the school will give priority to refunds as follows:
1) Unsubsidized Federal Stafford Loan; 2) Subsidized Federal Stafford Loan; 3) Unsubsidized Federal Direct Loan; 4) Subsidized Federal Direct Loan; 5) Federal Plus Loan; 6) Direct Plus Loan; 7) Federal Pell Grant; 8) Other Federal, State, private or institutional sources of aid; 9) the student.
The student will be billed if a balance is due to the school after the funds have been calculated. Any remaining balances are due and payable in full immediately and are subject to 1¼% interest per month on the unpaid balance, plus attorney's fees and collection costs. Please note: Examples of refund calculations are available in the Financial Aid Office.

**NOTICE OF CANCELLATION.**
This agreement shall not be binding until (3) business days have passed from the date of signing this agreement by both parties. If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled. To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice to STAR CAREER ACADEMY, 114 Cross Keys Road, Suite 101A, Berlin, NJ 08009 within 3 business days of the date of this contract.

**NOTICE.**
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance programs; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with the law concerning this creditor is the Federal Trade Commission, Washington, DC 20580.

It is the intention of Maker and Payee to conform strictly to applicable usury laws. Accordingly, if the transactions contemplated hereby or the various other applicable law (including the laws of the State of New Jersey and the laws of the United States of America), then, in that event, notwithstanding anything of the contrary in any agreement entered into in connection with, it is agreed as follows: (i) the aggregate of all consideration which constitutes interest under applicable law that is contracted for, charged or received under this note or under any of the other aforesaid agreements or otherwise in connection with this note shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be credited on the note by the holder thereof (or, if this note shall have been paid in full, refunded to the Maker); and (ii) in the event that maturity of this note is accelerated by reason of an election by the holder thereof resulting from any default hereunder or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum amount allowed by applicable law, and excess interest, if any, provided for in this note or otherwise shall be cancelled automatically as of the date of such acceleration or prepayment and, if theretofore prepaid, shall be credited on this note (or, if this note shall have been paid in full, refunded to the Maker).

NOTICE: See reverse side for additional terms of contract

6

⭐ S T A R
CAREER ACADEMY

# CHANGE OF STATUS

CAMPUS: _EHT_

Name: ▓▓▓▓▓▓▓▓▓▓▓▓   Start Date: _1/4/10_   Date of Determination: _12/13/10_

Current Program: _ST_   Current Shift: AM  PM  Eve   Current Module: _Extern_

## Transfer to Another Shift (same program): An Enrollment Agreement Addendum must be completed

Program: _____   Date Effective: _____

Current Shift:        AM    PM    EVE    Hours Completed: _____

New Shift:            AM    PM    EVE    Hours Needed: _____

## Transfer to Another Program: An Enrollment Agreement Addendum must be completed

Original Program: _____   AM   PM   EVE

Original Start Date: _____   Hours Completed: _____

New Program: _____   AM   PM   EVE

New Mod Date: _____   Hours Needed to Complete: _____

## Leave of Absence: (Return from LOA on Separate Form)

LOA Start Date: _____   Expected Return Date (next module start): _____

New Graduation Date: _____   Hours Completed: _____

Course Returning to: _____   Hours Needed to Complete: _____

Reason: _____

## Repeat Module:

Module Failed: _____   Hours Passed: _____   Hours Needed: _____

New Projected Grad Date: _____   New LDIC: _____

## Terminated/Withdrawn:

Official Drop Date: _8/15/10_   Hours Completed: _720_

Reason for Termination: _Failure progress on externship Due to no site_

## Graduate:

Graduation Date: _____   Externship Required:   YES*   NO

*Externship Evaluation Attached.

Is student eligible to receive diploma based on current standing?   YES   NO

Executive Director: _____   Date: _12/13/10_

Director of Education: _____   Date: _____

Registrar: _____   Date: _____

White—Registrar   Canary—Corporate   Pink—FA

SCA2 (05/10)